Filed
6/26/2018 9:49 AM
**Annie Rebecca Elliott**
District Clerk
Fort Bend County, Texas
Shelby Taylor

CAUSE NO. 18-DCV-249370

| | | |
|---|---|---|
| **HAMZAH ALI** | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| **AZHAR MAHMOOD CHAUDHARY** | § | 458th JUDICIAL DISTRICT |
| **AND AZHAR CHAUDHARY LAW FIRM,** | § | |
| **P.C.** | § | |

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Hamzah Ali, Sanaa Mobayed, Zakya Roshan Karmali, and Jennifer Balcazar Martinez (Plaintiffs) and respectfully file this First Amended Petition against Azhar Mahmood Chaudhary and Azhar Chaudhary Law Firm, P.C. (Defendants) and respectfully show the Court the following:

### A. DISCOVERY CONTROL PLAN

1. Plaintiffs intend to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4 and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiffs seek monetary relief in excess of $1,000,000.00.

### B. PARTIES

2. Plaintiff(s) Hamzah Ali (Ali), Sanaa Mobayed (Mobayed), Zakya Roshan Karmali (Karmali), and Jennifer Balcazar Martinez (Martinez) are individuals residing in Ft. Bend County, Texas.

3. Defendant Azhar Chaudhary (Chaudhary) is an individual, who resides in Harris County, Texas; and may be served with process 1208 Highway 6, Suite B, Sugar Land, Fort Bend County, TX 77478, or wherever he may be found.  This Defendant has appeared and answered.

4. Defendant Azhar Chaudhary Law Firm, P.C. (Chaudhary, P.C.) is a professional corporation doing business in Fort Bend County, Texas; and may be served with process by serving its

registered agent, Azhar Chaudhary at 1208 Highway 6, Suite B, Sugar Land, TX 77478 or wherever he may be found.  This Defendant has appeared and answered.

### C. JURISDICTION

5. The Court has subject matter jurisdiction over the controversy because the claims asserted in this Petition arose, in whole or in part, in Fort Bend County, Texas and the amount in controversy exceeds the minimal jurisdictional limits of the court.

6. This Court has personal jurisdiction over each Defendant because the acts and omissions complained of herein occurred in Fort Bend County, Texas, each Defendant does business in the State of Texas has committed a tort, in whole or in part in Texas, and is a resident and citizen of Harris County, Texas.

### D. VENUE

7. Venue for this suit for breach of contract is permissive in Fort Bend County, Texas under §15.035(a) of the Texas Civil Practice & Remedies Code because this county is where the obligation was to be performed and is where Plaintiff and Defendants reside.

### E. FACTS

8. In late January 2017, President Donald Trump signed an executive order 13769 that banned foreign nationals from seven predominantly Muslim countries from visiting the country for ninety (90) days, suspended entry to the country of all Syrian refugees indefinitely and prohibited any other refugees from coming into the country for one hundred and twenty (120) days.  Since the institution of the first executive order (a.k.a. Muslim ban) there has been a persistent and tenacious push by the Trump executive administration to impede or even halt the immigration of Muslims to the United States.  The widespread media coverage of Trump's 'Muslim Ban,' caused many in the Muslim community, and especially those in the United States who had not yet become citizens or achieved permanent residency status, to fear they may not be allowed to continue to live and work in the United States.

9. During this time period, Plaintiff Ali, his wife, Plaintiff Mobayed and two children, were living in the United States under Ali's L1A visa. An L1A visa is a non-immigrant visa which allows overseas companies to transfer executives and managers (including business owners) to the United States for up to seven years. As a Muslim, originally from Pakistan, but holding a citizenship from Yemen, one of the countries banned under Trump's original travel ban order, Plaintiff Ali became deeply concerned that he needed to immediately and expeditiously obtain Permanent Residency status (or Green Cards) for himself and his family so that their ability to live in the United States would not be jeopardized by the threatening immigration orders rapidly coming from the Trump administration. As such, Ali sought recommendations for an attorney who could handle procuring Green Cards for him, his wife and children on an expedited basis, given the backdrop of travel bans and fear in the United States.

10. Plaintiff Ali was referred to attorney Azhar Chaudhary, the sole director and shareholder of Azhar Chaudhary Law Firm, P.C. and immediately set an appointment to discuss his immigration needs in early February 2017. Defendant Chaudhary echoed Ali's concerns, and insisted Plaintiff Ali needed to take action *immediately* to secure his family's stay in the United States.

11. Furthermore, Chaudhary represented to Ali that he had access to several 'high level' United States government officials who could assist Ali in obtaining his US Green Cards on an expedited basis. Defendant Chaudhary lured Ali to use his legal services by repeatedly promising Defendant's contacts had delivered in the past and would deliver for Ali as well. Defendant Chaudhary further represented Ali could have his Green Cards in as little as thirty (30) days' time. For procuring Ali, Mobayed, and their two children's Green Cards, Chaudhary would charge Ali $400,000.00, some payable up front and the balance payable upon completion. During their meeting, Chaudhary was so insistent Ali needed to take action that Chaudhary actually wrote out the first check for $150,000.00 and simply had Ali sign the check so Chaudhary could get started on securing Ali and his family's Green Cards.

12. Over the next month, Chaudhary's office communicated with Ali the requirements needed to submit his family's Green Card applications, and Plaintiff Ali complied and procured the necessary documentation. On March 13, 2017, Chaudhary texted Plaintiff Ali with a copy of a white card (partially illegible) with a note of 'Congratulations!' When Plaintiff Ali met Chaudhary shortly thereafter on or about March 21, 2017, Ali was provided 4 of these white cards and told that these were just temporary and his, Plaintiff Mobayed, and their children's Green Cards would be mailed to them shortly. Chaudhary then asked for the balance of attorneys' fees due. Plaintiff Ali, understanding that his, Plaintiff Mobayed and their children's Green Card applications were approved, and were simply awaiting the final cards in the mail, paid Chaudhary the final $250,000.00 owed for the immigration work per the parties' agreement. Because Plaintiff Ali believed his, Plaintiff Mobayed, and their children's permanent residency status to be completed, Plaintiff Ali recommended Chaudhary to work on the immigration paperwork for his mother, Plaintiff Karmali, and an employee of Ali, Plaintiff Martinez. As a result, another $425,000.00 was paid to Defendants to complete the immigration work for Plaintiff Karmali and Plaintiff Martinez.

13. At the same meeting wherein, Plaintiff Ali paid the final $250,000.00 owed for his, Plaintiff Mobayed, and his children's Green Cards, Chaudhary immediately started pressuring Ali about working on his Mother's immigration case. Chaudhary made his mother's immigration case sound urgent, and that the travel ban was constantly changing and that his mother, Plaintiff Karmali, would not be able to come to the US. Plaintiff Karmali had been traveling to the US for more than ten years to stay for a month at a time to visit her family in the US. Due to Chaudhary's pressure, Plaintiff Ali immediately went home and started talking with his mother to come to the US as soon as possible so that their permanent immigration work could be started. Plaintiff Karmali, along with her minor daughter, came to live with Plaintiff Ali and Plaintiff Mobayed in March/April of 2017. Because Chaudhary had already come through for Plaintiff Ali (allegedly), Ali paid Chaudhary the full $400,000.00 to complete the immigration

paperwork to secure Plaintiff Karmali's and her minor daughter (Ali's sister) permanent immigration status in April of 2017. As of September 2017, no work had been performed for Plaintiff Karmali and her daughter and their I94 were set to expire. Ali had to scramble to get Chaudhary to reapply for their temporary status to remain in the US. When Ali later checked to see the status of Plaintiff Karmali and her daughter's Green Cards, there was not even a case number assigned for them. No action had been taken for the payment of funds made by Ali in April 2017. No funds were ever returned despite no work being performed.

14. Plaintiff Martinez also requested her immigration work be performed by Chaudhary due to Plaintiff Ali's recommendation. Chaudhary applied for a TN visa on Plaintiff Martinez' behalf, which was promptly denied because she would have never qualified to that particular type of visa. When Plaintiff Ali and Plaintiff Martinez got word Plaintiff Martinez' visa application was denied, they promptly set a meeting with Chaudhary. At this meeting, Chaudhary proclaimed the TN visa denial was a 'blessing' because it would only allow Martinez to stay in the US temporarily for 3 years.

15. Chaudhary proposed the only solution to obtain permanent immigration status was for her to get married and Chaudhary already knew someone that would be willing to marry Martinez and was also Hispanic. Chaudhary promised that Martinez would not have to interact with her new spouse, except at a couple of arranged meetings such that Martinez and the spouse could get to know one another close to the time of the final immigration meeting. Although Martinez expressed her concern that the immigration laws were very strict about immigration via marriage and because her TN visa had already been denied, Chaudhary continued to assuage her fears. Chaudhary told Martinez the marriage would have no effect on her life and that God was trying to help her. Chaudhary promised he would assist Martinez in making sure her and her new spouse would have joint tax returns, bank statements, and bills such that no immigration officer could deny her a permanent Green Card after two years of marriage.

16. Little did Plaintiff Ali know, that the customary and reasonable attorneys' fees charged in this area for procuring Green Cards for Plaintiff Ali and his family were between $10,000.00 and $15,000.00, a mere fraction of what Defendants charged Plaintiffs the same services. Plaintiff Ali actually paid Defendants $835,000.00 in attorneys' fees, as follows:

    a. $150,000.00 on February 6, 2017 via check number 1018;

    b. $10,000.00 on February 6, 2017 via check number 1003;

    c. $250,000.00 on March 21, 2017 via check number 1049;

    d. $400,000.00 on April 7, 2017 via check number 1040; and

    e. $25,000.00 on May 11, 2017 via check number 1060.[1]

17. Despite Plaintiff Ali's vast payments and Chaudhary's representations, on or about October 31, 2017, Ali received a 'Request for Evidence' from the US Citizenship and Immigration Services. This notice was the first time Plaintiff Ali had notice that his and his wife (Plaintiff Mobayed) and children's Green Cards had not been approved and/or completed. A request for evidence is made when an application/petition is lacking required documentation/evidence (initial evidence) or the officer needs more documentation/evidence (additional evidence) to determine an applicant's eligibility for the benefit sought. Plaintiff Ali sought a meeting with Chaudhary to explain why he had misrepresented the Green Card status to Ali. Having received no plausible explanations from Chaudhary, Plaintiff Ali terminated his services in November 2017 and requested the return of his unearned attorneys' fees and invoices for time spent on all of the Plaintiffs' immigration work.

18. Plaintiff Ali further demanded a copy of the engagement letter or attorney/client contract, and Defendants refused to provide such to Plaintiff. Plaintiff Ali demanded a full accounting of the funds given to and cashed by Defendants, which Defendants once again refused to provide. Finally, Plaintiff Ali demanded a copy of his file, to determine what work had been performed,

---

[1] See Plaintiff's **Exhibit A**, attached hereto and incorporated herein by reference.

Defendants again refused. Only after repeated requests, and Plaintiff Ali hiring a law firm to assist, did Chaudhary finally send Plaintiff Ali's new immigration counsel a portion of the file for review. The file sent by Chaudhary did not include any information regarding Plaintiff Ali's mother or sister's immigration paperwork.

19. Despite knowledge of the dispute, and repeated requests for the return of the unearned fees, to date Defendants have refused to return the $835,000.00 Plaintiff Ali paid Defendants in exchange for services never performed. Defendants have further failed to provide the complete file documents or an accounting, per Plaintiff Ali's requests. As such, Plaintiff Ali has been forced to bring this matter to the Court as follows.

### F. INTERRELATIONSIP OF DEFENDANTS

20. Defendants Chaudhary and Chaudhary, P.C. at all times relevant to the instant cause of action are believed to have been engaged in a joint venture and/or enterprise with respect to the ownership, operation and/or management of Chaudhary, P.C.

21. Defendant Chaudhary is liable for the acts of Chaudhary, P.C. because Defendants were engaged in a joint enterprise. Defendants have an agreement, a common purpose, a community of pecuniary interest in that common purpose, and an equal right to direct and control the enterprise. At the times relevant to the allegations set forth in the petition, defendants herein were acting within the scope of the enterprise.

22. Alternatively, Plaintiff asserts that Defendant Chaudhary is liable for the acts of Chaudhary, P.C. because they are believed to have been engaged in a joint venture based on an agreement that has a community of interest in the venture, an agreement to share profits, an express agreement to share losses, and a mutual right of control or management of the venture.

23. In addition, the management, financing, and operation of both Defendants are so intermingled that these entities are mere alter egos of one another. Based on information and belief, the management and operation of Chaudhary, P.C. is conducted in such a manner that it tends to deceive others, to violate confidence, and to injure public interests.

24. When considering the total dealings of these Defendants it is clear that there is such a unity of interest and dealings between them that Defendants have no separate identities and are virtually the same. For the aforementioned reasons and for the purposes of assessing responsibility for damages the defendants should be treated as one and the same to avoid injustice or inequity.

## G. VICARIOUS LIABILITY

25. Pleading additionally or in the alternative, at all times material, Azhar Chaudhary was a principal of Azhar Chaudhary Law Firm, P.C. and acting within the course and scope of his employment, duties and/or affiliation with Azhar Chaudhary Law Firm, P.C. Therefore, Azhar Chaudhary Law Firm, P.C. is vicariously liable under the doctrine of respondeat superior for all acts, omissions and conduct of Defendant Azhar Chaudhary alleged herein.

## H. BREACH OF CONTRACT

26. Defendants Chaudhary and Chaudhary, P.C. and Plaintiffs Ali, Mobayed, Karmali, and Martinez formed a contract whereby Defendants would provide legal services to Plaintiffs by securing their US Green Cards. In exchange, for these legal services, Defendants charged and accepted $835,000.00 in fees. *See Plaintiff's Exhibit A.* Although Plaintiffs dutifully performed their obligations under the contract, and all conditions precedent have been performed by Plaintiffs, Defendants have failed to perform any of their obligations under the contract.

27. Defendants breached their promise to perform legal services by charging an excessive and unreasonable fee given the services to be performed, and then failing to perform the services requested or return the unearned fees. As a result of Defendants' material breach of the contract, Plaintiffs sustained actual damages in the amount of charges in excess of work performed and in excess of a reasonable, customary charge for such services, consequential damages, and attorneys' fees as laid forth below.

## I. QUANTUM MERUIT

28. Pleading additionally or in the alternative, Plaintiffs provided Defendants with the benefit of $835,000.00 which Defendants accepted. *See Plaintiff's Exhibit A.* Defendants knew Plaintiffs expected Defendants would secure their permanent immigration status in exchange for the payments. Defendants received the benefit without providing any of the expected services. As a result, Defendants have been unjustly enriched and Plaintiffs have been damaged, as more fully set forth below.

## J. BREACH OF FIDUCIARY DUTY

29. Pleading additionally or in the alternative, the attorney-client relationship is a fiduciary relationship requiring good faith and fair dealing. It requires the utmost candor, honesty, undivided loyalty, fidelity, integrity, fairness, full and fair disclosure and perfect candor. As Plaintiffs' attorneys, Defendants owed all Plaintiffs the duty of utmost candor, full disclosure, openness and forthrightness. Defendants had an affirmative duty to disclose information to Plaintiffs even when not directly asked for such information. Defendants owed Plaintiffs a duty to place Plaintiffs' interests above their own and to openly disclose information to Plaintiffs.

30. Defendants clearly breached their fiduciary duties to Plaintiffs in multiple respects, including but not limited to charging Plaintiffs an unreasonable and unconscionable fee for the legal services to be performed, as well as receiving payment (and failing to return any portion of that payment) but failing to perform any of the legal services promised. It is further clear Defendants intentionally breached their fiduciary obligations to Plaintiffs because they charged such an unreasonable and unconscionable fee (without providing any service) with an intent to gain these additional monies for their own benefit. Because of Defendants' breach of their fiduciary obligations owed to Plaintiffs, Plaintiffs have suffered damages as fully set forth

below, and Defendants have benefitted by receiving $835,000.00 without performing any services.

## K. FRAUD

31. Defendants represented to Plaintiffs and charged Plaintiffs $835,000.00 as the "reasonable and customary fee" for procuring Green Cards on an expedited basis. Defendants represented to Plaintiff Ali and Plaintiff Mobayed that their Green Card applications had been approved, and that they were just waiting for the final cards in the mail. Defendants represented Plaintiff Karmali's immigration work had been started for the payment of $400,000.00. Defendants represented to Plaintiff Martinez at first that a TN visa would secure her immigration status quickly. When Plaintiff Martinez' TN visa was denied, Defendants then proposed a sham marriage was the only way to secure Plaintiff Martinez' immigration status, and that with his help in creating financial documents, her permanent Green Card could not be denied.

32. At the time such representations were made, Defendants knew the material representations regarding the excessive fee were false or made such representations recklessly, as positive assertions, without knowledge of their truth. Defendants certainly made such representations with the intent Plaintiffs act on them, and Plaintiffs in fact relied on the representations of Defendants by paying Defendants $835,000.00 and by trusting Defendants with their immigration work.

33. As a result of Defendants material and false representations Plaintiffs were damaged as set forth more fully below.

## L. NEGLIGENCE

34. Defendants Chaudry and Chaudry, P.C., as Plaintiffs' attorneys, owed a duty to Plaintiffs to exercise that degree of care, skill, and competence that a reasonable, competent immigration attorney would exercise under similar circumstances. Defendants breached their duty to Plaintiffs in at least (but not limited to) the following ways:

    a. Delaying or not handling a matter entrusted to Defendants' care by Plaintiffs;

    b. Not providing advice or relevant information when legally obligated to do so;

    c. Providing incorrect or inaccurate legal advice;

    d. Providing incompetent immigration legal services;

    e. Failing to keep attorney funds separate from unearned client funds;

    f. Failing to provide Plaintiffs with a copy of his file and an accounting when requested;

    g. Failing to provide invoices for the work performed (if any);

    h. Failing to return the unearned clients funds when requested.

35. Defendants' negligent acts and omissions proximately caused Plaintiffs' damages, in the amount of at least $835,000.00, as well as permanently setting Plaintiffs back in retrieving their permanent US immigration status, and as more fully set forth below.

## M. BREACH OF SETTLEMENT AGREEMENT CONTRACT

36. Defendants Chaudhary and Chaudhary, P.C. and Plaintiff Ali formed a contract to settle this matter via mediation, as well as email exchange. Despite reaching an agreement on all material terms to the contract, Defendants failed to follow through on the agreed upon material terms of the settlement agreement.

37. Defendants have breached the settlement agreement. As a result of Defendants' material and anticipatory breach of the settlement contract, Plaintiff Ali sustained damages in the amount of the settlement agreement, as well as additional court costs and attorneys' fees as laid forth below.

## N. GROSS NEGLIGENCE

38. The negligent acts and omissions of Defendants rise to the level of gross negligence. When viewed objectively from the standpoint of Defendants at the time performing their legal services, Defendants' acts and omissions involved an extreme degree of risk considering the probable harm to Plaintiffs. Furthermore, Defendants had actual, subjective awareness of the

risk involved, yet proceeded to take Plaintiffs' payments with complete conscious indifference to the rights and welfare of Plaintiffs.

## O. DAMAGES

39. All conditions precedent to this lawsuit have been performed.

40. For Defendants breach of the contract, Plaintiffs are entitled to their actual damages of $835,000.00, consequential damages, together with pre- post judgment interests, court costs, and attorneys' fees in prosecuting this action and any appeal. Tex. Civ. Prac. & Rem. Code §38.001.

41. For the unjust enrichment of Defendants, Plaintiffs are entitled to their actual damages, pre- and post-judgment interest, court costs, and attorneys' fees for prosecuting this action and any appeal. Tex. Civ. Prac. & Rem. Code §38.001.

42. For Defendants breach of their fiduciary duties to Plaintiffs, Plaintiffs are entitled to their actual damages of $835,000.00, mental anguish damages, exemplary damages for Defendants intentional breach of their fiduciary duties, pre- post judgment interest, and court costs. Furthermore, Plaintiffs request the court determine Defendants have forfeited their fee charged to Plaintiffs and order Defendants to make a full and immediate accounting of the unearned legal fees.

43. For Defendants fraud, Plaintiffs are entitled to their actual damages of $835,000.00, mental anguish, pre- post judgment interest, court costs and exemplary damages. Tex. Civ. Prac. & Rem. Code §41.003.

44. For Defendants negligence, Plaintiffs are entitled to their actual damages including at a minimum the $835,000.00 paid in fees, as well as damages incurred as a result of the negligent legal services performed, pre- post judgment interest, and court costs.

45. For Defendants gross negligence, Plaintiffs are further entitled to exemplary damages and their reasonable and necessary attorneys' fees incurred in prosecuting this action and any appeal. Tex. Civ. Prac. & Rem. Code §41.003.

### P. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Hamzah Ali, Sanaa Mobayed, Zakya Roshan Karmali, and Jennifer Balcazar Martinez request Defendants Azhar Mahmood Chaudhary and Azhar Chaudhary Law Firm, P.C. be cited to appear and answer, and that on final trial, Plaintiffs have the following:

a. Judgment against Defendants for the sum established by proof at trial that is within the jurisdictional limits of this Court;

b. Additional and/or exemplary damages against Defendants;

c. Judgment for reasonable attorneys' fees as specified above;

d. Prejudgment and Post judgment interest as provided by law;

e. Costs of suit; and

f. All other damages, general and special, in law and in equity to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**HUSAIN LAW + ASSOCIATES, PC**

By: /s/ Nomaan Husain
**NOMAAN HUSAIN**
State Bar No. 24000743
**LEIGH S. MONTGOMERY**
State Bar No. 24052214
5858 Westheimer, Suite 400
Houston, Texas 77057
Telephone: (713) 800-1200
Facsimile: (713) 800-0786
Email: eserve@hlalawfirm.com

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

   That on this the 26th day of June, 2018, I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded pursuant to Tex. R. Civ. P. 21a or other Court ordered method of service as follows:

*Via E-Service: dschwartz@vorys.com*
Mr. Richard A. Schwartz
Vorys, Sater, Seymour and Pease, LLP

                 */s/ Leigh S. Montgomery*
                 **LEIGH S. MONTGOMERY**