# EXHIBIT "A-83"

Filed
10/21/2024 11:54 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Alvi Aimen

## CAUSE NO. <u>18-DCV-249370</u>

| | | |
|---|---|---|
| HAMZAH ALI | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | 240TH JUDICIAL DISTRICT |
| | § | |
| AZHAR MAHMOOD CHAUDHARY | § | |
| AND AZHAR CHAUDHARY LAW | § | |
| FIRM, P.C. | § | FORT BEND COUNTY, TEXAS |
| *Defendants.* | § | |
| | § | |

## <u>DEFENDANTS' POST-HEARING BRIEF IN SUPPORT OF PLEA TO THIS COURT'S PLENARY JURISDICTION</u>

**I.    <u>Factual and procedural background</u>**

The Plaintiff filed his original petition on March 6, 2018. Defendants filed their answer on April 6, 2018. On June 26, 2018, Plaintiff filed an amended petition. Two years after filing this cause, on August 26, 2022, Plaintiff filed *Plaintiff's Traditional and No-Evidence Motion for Summary Judgment*. On October 21, 2020, Defendants filed their response to the motion, and on October 29, 2020, the trial court denied Plaintiff's motion.

For the next two years, Plaintiff simply failed to prosecute this case, and on November 1, 2022, after a prolonged period of inactivity, the trial court issued a DWOP notice. On December 14, 2022, Plaintiff filed a verified motion to retain, the trial court scheduled a hearing for December 15, 2022. Notably, although Defendants' counsel appeared, neither Plaintiff nor his counsel attended the hearing. However, the trial court, *sua spont*e, reinstated the case. Notwithstanding the Court's gracious grant of another opportunity for a trial on the merits, another year lapsed without any activity in the case—Plaintiff's lack of diligence was fully demonstrated to this Court once again. On June 27, 2023, the 458th Judicial District Court transferred this case to the 240th Judicial District Court. On May 1, 2024, after approximately one more year of further inactivity in the case, this court issued a second DWOP notice and scheduled a hearing for May 30, 2024. Again, Plaintiff

10/22/2024 AA

ROUTED TO COURT
RT'D TO D. CLERK 10/29/2024 DCW

ignored this Court's notice of hearing, and did not file a motion to retain; moreover, neither Plaintiff nor his two attorneys of record, Nomi Husain and Alan B. Daughtry, appeared at the DWOP hearing. Consequently, in the absence of a motion to retain and failure to appear, on May 30, 2024, this court dismissed this cause for want of prosecution.[1]

On or about June 10, 2024, , Lloyd E. Kelly ("Mr. Kelly"), filed a motion to reinstate the case, falsely claiming that he had been Plaintiff's counsel since 2022; however, in addition to making flagrant misrepresentations to this court under the penalty of perjury (discussed below), Mr. Kelly failed to meet the verification requirement for a motion to reinstate prescribed by Texas Rules of Civil Procedure.[2] Moreover, at the June 25, 2024 hearing on motion to reinstate, it was determined, on the record by this court (discussed below) that the grounds set forth in the Plaintiff's motion to reinstate were patently false.

Defendants filed their response to motion to reinstate on June 14, 2024, alerting the court that the Plaintiff's motion to reinstate does not meet the requirements for reinstatement prescribed in Tex. R. Civ. P. 165a(3), and that Plaintiff and his attorneys have been dilatory and consciously indifferent towards the trial court's sworn duty to comply with the statutory mandate for disposition of cases on its docket, Plaintiff failed to meet any of the factors required for reinstatement under appellate authorities, and reinstatement under Supreme Court authority, *In re Connor* 458 S.W. 3d 352, 534-35(Tex. 2015) ( not granting a dismissal in face of unmitigated and unexplained delay) would be an abuse of discretion.[3]

---

[1] A trial court may dismiss a case for want of prosecution under Texas Rule of Civil Procedure 165a when a party fails to appear at a hearing or trial or when the case has not been disposed of within the Texas Supreme Court's time standards. TEX. R. CIV. P. 165a(1), (2). A trial court also has inherent power to dismiss when the case has not been prosecuted with due diligence. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999).

[2] "A motion to reinstate shall set forth the grounds therefor *and be verified by the movant or his attorney*." *See*, Tex. R. Civ. P. 165a(3). Emphasis added.

[3] The Texas Supreme Court in *In re Connor* 458 S.W. 3d 352, 534-35(Tex. 2015), decided that a plaintiff has a duty to "prosecut[e] the suit to a conclusion with reasonable diligence," failing which a trial court may dismiss for want of

On June 25, 2024, the trial court conducted a hearing on the motion to reinstate and concluded that, (1) Plaintiff failed to diligently prosecute this cause; and (2) notwithstanding Mr. Kelly's averments in open court, he did not represent the Plaintiff in 2022 or 2023. Moreover, this court admonished Mr. Kelly in open court for making factual misrepresentations in support of the motion to reinstate (discussed in detail below).

Importantly, at the hearing, Defendants pointed out to the court and informed Plaintiff's counsel, Mr. Kelly, that the motion was deficient, as it lacked the statutory requirement of verification by either the Plaintiff or his counsel. *See*, Exhibit A, Tr. vol. 1 of 1, pp. 28, lines 24-25 and pp. 28-29, lines 1-2, June 25, 2024, which is attached herewith and incorporated by reference as if fully set forth verbatim. Specifically, Defendants argued that in addition to not complying with basic requirements of Tex. R. Civ. P. 165a(3) reading a motion for reinstatement, the jurat executed by Plaintiff's counsel Mr. Kelly did not include the statutorily required date of birth. *McConnell v. May*, 800 S.W.2d 194, 194 (Tex.1990) (orig.proceeding) (granting mandamus relief to set aside order reinstating case more than thirty days after dismissal on unverified motion); *Butts v. Capitol City Nursing Home, Inc*., 705 S.W.2d 696, 697 (Tex.1986).  Consequently, there was no motion before the court to adjudicate. *Id.*

On June 25, 2024, the trial court, notwithstanding the Defendants' objections to the motion to reinstate, including the fatal defects which made the motion a nullity, without entering a written order, orally granted the motion to reinstate. It is important to note that the trial court maintained plenary jurisdiction for another five (5) days, until June 29, 2024—for a total of thirty (30) days, after dismissing the case for want of prosecution on May 30, 2024. Essentially, when the

---

prosecution. *Callahan v. Staples,* 139 Tex. 8, 161 S.W.2d 489, 491 (1942). The issue here is whether a trial court abuses its discretion by refusing to grant a motion to dismiss for want of prosecution in the face of unmitigated and unexplained delay. We hold that it does."

Defendants alerted the court and Plaintiff's counsel Mr. Kelly that Plaintiff's motion to reinstate was deficient, because it did not include declarant's date of birth and thus not verified, the trial court had five (5) additional days to *sua sponte* enter a written order of reinstatement. Similarly, the Plaintiff's counsel Mr. Kelly had five (5) more days, until June 29, 2024, to file an amended motion to reinstate, curing the verification deficiency with an affidavit, or by adding his date of birth to the jurat, including its county of execution, thereby complying with the statutory requirements of Section 132.001 of Tex. Civ. P. Rem. Code.

However, the trial court did not enter a written order to reinstate the case, nor did Mr. Kelly file an amended motion to reinstate or otherwise cure the deficiency in his declaration during the time period trial court retained plenary jurisdiction. Ultimately, fifty-six (56) days after the trial court dismissed the case for want of prosecution, and twenty-six (26) days after losing plenary jurisdiction, on July 25, 2024, the trial court entered a void order purporting to reinstate the case on its trial docket.

The same day, Defendants filed their plea to this Court's plenary jurisdiction and objected to reinstatement of the case. Plaintiff filed his response on August 16, 2024. On October 17, 2024, the trial court conducted a hearing and asked the parties to file a brief. Accordingly, Defendants hereby file this brief in support of their argument that the trial court lost plenary jurisdiction on June 29, 2024, and that the July 25, 2024, order reinstating the case on its docket is void. Further, this brief particularly addresses issues specifically requested by the Court regarding Texas Supreme Court's precedent relative to the sufficiency of substantial compliance with statutory requirements of Tex. Civ. Prac. & Rem. Code, Section 132.001. Defendants will respectfully show the court that Plaintiff's motion to reinstate was not verified and therefore a nullity. Consequently,

4

this court's plenary jurisdiction expired thirty (30) days after it dismissed this case for want of prosecution, and the July 25, 2024 order reinstating the case is void.

## II.   <u>**Misrepresentations made by Plaintiff's counsel Lloyd E. Kelly to the court**</u>.

At the June 25, 2024 hearing on Plaintiff's motion to reinstate, Plaintiff's new counsel Mr. Kelly made absolutely false statements to the court. Unfortunately, the exchange between the court, and Mr. Kelly's misrepresentations, including flagrant disregard for the decorum of the court, spans over twenty-three (23) pages, *see* Exhibit A, transcript of the oral hearing is attached herewith and incorporated as if fully set forth verbatim. Accordingly, if Defendants were to include each factual misrepresentation made by Mr. Kelly to this court, it would usurp this entire brief; therefore, a few selected references are attached below, where the court caught Mr. Kelly's mendacity and admonished him for being dishonest and making false representations to the court:

> THE COURT:   Counsel, I just want the counsel to be honest to the Court.
>
> MR. KELLEY:   I'm very honest.   I told you I didn't get notice and that's been verified by your clerks.
>
> THE COURT:   You haven't even submitted -- filed your notice of appearance, then how can you expect a notice from the Court?

*See* Exhibit A, Tr. vol. 1 of 1, pp. 4, lines 1-25; pp. 5, lines 1-23 June 25, 2024.

THE COURT:  Counsel, you're talking an entirely different subject.  I'm talking about you not filing for your appearance.  You are expecting the Court to send every single notice to you when you haven't even submitted a notice of appearance.

MR. KELLEY:  Your Honor, the Plaintiff wants to prosecute his case.  If there's been some kind of miscommunication because of the multiple cases and the movement of the case without notice -- we were expecting a trial setting and when that didn't happen we sua sponte looked.

THE COURT:  You are still misrepresenting. There was notice to the lead counsel.

MR. KELLEY:  Nomaan.

THE COURT:  Yes.

MR. KELLEY:  He says he doesn't get the notice.

THE COURT:  Let him come then.

*See*, Exhibit A, Tr. vol. 1 of 1, pp. 23, lines 8-25, June 25, 2024.

THE COURT:  Make a fair representation. Make an honest statement.  Don't try to mislead the Court.

MR. KELLEY:  I did not.

THE COURT:  Don't say something that is not true and when you know that it is not true.

MR. KELLEY:  I did not, Judge.  I promise you I --

THE COURT:  You did that, Counsel, multiple times in this case.

*See*, Exhibit A, Tr. vol. 1 of 1, pp. 44, lines 8-17, June 25, 2024.

MR. KELLEY:  I apologize, Judge.  Let me start again by apologizing for whatever has happened.

THE COURT:  Make a fair representation. Make an honest statement.  Don't try to mislead the Court.

MR. KELLEY:  I did not.

THE COURT:  Don't say something that is not true and when you know that it is not true.

MR. KELLEY:  I did not, Judge.  I promise you I --

THE COURT:  You did that, Counsel, multiple times in this case.

*See*, Exhibit A, Tr. vol. 1 of 1, pp. 44, lines 6-17, June 25, 2024.

```
            THE COURT:  And you are --
            MR. KELLEY:  But it stayed on the trial
docket.
            THE COURT:  Counsel, now you are
misrepresenting.  You're not aware of it.
            MR. KELLEY:  No, I got notice of this.
            THE COURT:  Yeah.  So how would you say
that you are not aware of it?
            MR. KELLEY:  Well.  Because it never -- it
never got --
            THE COURT:  You got an E-file notice,
right?
            MR. KELLEY:  It didn't get dismissed,
Judge.  It stayed on the --
```

*See*, Exhibit A, Tr. vol. 1 of 1, pp. 39, lines 10-23, June 25, 2024.

## III.    <u>The motion to reinstate was not verified, therefore a nullity</u>.

"A verification is "[a] formal declaration made in the presence of an authorized officer, such as a notary public, by which one swears to the truth of the statements in the document." (*In re Valliance Bank* (2013), 422, S.W.2d 194, 194; *Macarangal v. Andrews* (1992) 838 S.W.2d 632,633). Any judicial action taken after a trial court's plenary power has expired is void. *See State ex rel. Latty v. Owens* (1995) 907 S.W.2d 484, 486). Pursuant to Texas Civil Practice and Remedies Code Section 132.001, an unsworn declaration may be used *in lieu* of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law. *See* Tex. Civ. Prac. & Rem. Code, Section 132.001.

"A motion to reinstate shall set forth the grounds therefor, and be verified by the movant or his attorney. It shall be filed with the clerk within 30 days after the order of dismissal is signed or within the period provided by Rule 306a. *See* Tex, Civ. Prac. & Rem. Code, Section 132.001. The Supreme Court of Texas has made clear that an unverified motion to reinstate is a nullity and does not extend the trial court's plenary jurisdiction or the time in which to file a notice of appeal. *McConnell v. May*, 800 S.W.2d 194, 194 (Tex.1990) (orig.proceeding) (granting mandamus relief to set aside order reinstating case more than thirty days after dismissal on unverified motion); *Butts v. Capitol City Nursing Home, Inc*., 705 S.W.2d 696, 697 (Tex.1986). The time limits provided in rule 165a are mandatory and jurisdictional; orders of reinstatement entered after their expiration are void. *Harris Cnty. v. Miller*, 576 S.W.2d 808, 809 (Tex.1979) (orig.proceeding); *Danforth Mem'l Hosp. v. Harris*, 573 S.W.2d 762, 763 (Tex.1978) (orig.proceeding); *N–S–W Corp. v. Snell*, 561 S.W.2d 798, 798 (Tex.1977) (orig.proceeding); *see United Residential Props., L.P. v. Theis*, No. 14–11–00330–CV, 2012 WL 3573882, at *2 (Tex.App.Houston [14th Dist.] Aug. 21, 2012, no pet.).

Although Plaintiff filed a motion to reinstate was filed on June 10, 2024, while the trial court retained plenary jurisdiction, the subject motion was not verified, because it did not comply with the requirements of Tex. Civ. Prac. & Rem. Code, Section 132.001, the jurat did not include Plaintiff's attorney's date of birth, his home address, or the county where it was signed, rendering

the declaration a nullity and consequently the motion to reinstate a nullity,[4] because it was not verified.[5]

IV. **The trial court's order dated July 25, 2024, reinstating the case, was entered after the court lost plenary jurisdiction—the subject order is void.**

i. **Void Order reinstating the case.**

A judgment is void "when it is apparent that the court rendering judgment 'had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.'" *Id.* (quoting *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985)). The order of reinstatement was not merely invalid or voidable; it was void from its inception. *See Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987). A void order is entirely null within itself; it is not susceptible to ratification or confirmation, and its nullity cannot be waived. *See Guardianship of B.A.G.*, 794 S.W.2d 510 (Tex. App.—Corpus Christi 1990) (void judgment) (citing *Easterline v. Bean*, 121 Tex. 327, 49 S.W.2d 427, 429 (1932); *American Universal Ins. Co. v. D.B. & B., Inc.*, 725 S.W.2d 764, 766 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.)). Holding a trial court's order void, when that same order may have led the parties to believe all was well may seem unfair, but just as a trial court cannot act when it has no jurisdiction, a reviewing

---

[4] The Supreme Court of Texas has made clear, however, that an unverified motion to reinstate is a nullity and does not extend the trial court's plenary jurisdiction or the time in which to file a notice of appeal. *McConnell v. May*, 800 S.W.2d 194, 194 (Tex.1990) (orig.proceeding) (granting mandamus relief to set aside order reinstating case more than thirty days after dismissal on unverified motion); *Butts v. Capitol City Nursing Home, Inc.*, 705 S.W.2d 696, 697 (Tex.1986). The time limits provided in rule 165a are mandatory and jurisdictional; orders of reinstatement entered after their expiration are void. *Harris Cnty. v. Miller*, 576 S.W.2d 808, 809 (Tex.1979) (orig.proceeding); *Danforth Mem'l Hosp. v. Harris*, 573 S.W.2d 762, 763 (Tex.1978) (orig.proceeding); *N–S–W Corp. v. Snell*, 561 S.W.2d 798, 798 (Tex.1977) (orig.proceeding); *see United Residential Props., L.P. v. Theis*, No. 14–11–00330–CV, 2012 WL 3573882, at *2 (Tex.App.Houston [14th Dist.] Aug. 21, 2012, no pet.).
[5] While some courts of appeals have recognized substantial compliance with the statutory jurat as sufficient, the Supreme Court of Texas has held that omission of the declarant's date of birth meant that an unsworn declaration could not be accepted in lieu of an affidavit even though the declaration stated that it was made under penalty of perjury. *See Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 702 & n.15 (Tex. 2019) (omission of birth date from unsworn declaration rendered it no evidence).

court cannot find jurisdiction where none exists. We find the trial court's May 4, 1999, order reinstating the case void.

ii.     **Oral pronouncement or docket entry reinstating the case is not sufficient.**

When a lawsuit is dismissed for want of prosecution, a plaintiff has thirty (30) days to file a motion for reinstatement. Tex. R. Civ. P. 165a(3); *Gillis v. Harris Cnty.*, 554 S.W.3d 188, 191 (Tex. App.-Houston [14th Dist.] 2018, no pet.). If a Plaintiff timely files a verified motion to reinstate, the trial court maintains plenary jurisdiction over the case for 30 days after it rules on the motion or the motion is overruled by operation of law, Tex. R. Civ. P. 165a(3). However, if the trial court does not sign a written order reinstating the case during that time, the dismissal becomes final. *Emerald Oaks Hotel*, 776 S.W.2d at 578; *see In re Wal-Mart Stores, Inc.*, 20 S.W.3d 734, 740 (Tex. App.-El Paso 2000, orig. proceeding) (holding that dismissal order became the final judgment upon the expiration of the trial court's plenary power despite oral ruling and instructions to reinstate).

"Texas Rule of Civil Procedure 165a expressly requires a 'signed written order' on a motion to reinstate." *Roberts v. Franklin*, No. 01-15-10022-CV, 2016 WL 578245, at *2 (Tex.App._ Houston 1st. Dist. October 4, 2016, no pet.). A trial court's oral pronouncement and docket entry are not an acceptable substitute for a written order. *Id., see also Salinas v. Salinas*, No. 08-17-00006-CV, 2017 WL 2889058, at *1 (Tex. App.-El Paso July 7, 2017, no pet.) (mem. op.) (citing *Emerald Oaks Hotel*, 776 S.W.2d at 578); *accord Wallingford v. Trinity Universal Ins. Co.*, 253 S.W.3d 720, 726 (Tex. App.- Amarillo 2007, pet. denied).

iii.    **Plaintiff's unverified motion to reinstate did not extend trial court's plenary power.**

On May 30, 2024, this court dismissed the instant case for want of prosecution ("DWOP"). Thereafter, although the Plaintiff attempted to file a so-called *verified* motion to reinstate pursuant

11

to Tex. R. Civ. P. 165a(3), including an unsworn declaration and jurat under Tex. Civ. Prac. & Rem. Code, Section 132.00, Plaintiff failed to meet the statutory requirements of verification. As explained *supra*, the jurat supporting the unsworn declaration *in lieu* of an affidavit and motion to reinstate did not include declarant's date of birth; therefore, the motion to reinstate was unverified, rendering it a *nullity*.[6] Hence, the subject motion did not extend the plenary power of the trial court;[7] consequently, this court lost plenary jurisdiction over this case on June 29, 2024, thirty (30) days after the instant case was dismissed for want of prosecution. Notwithstanding trial court's oral pronouncement reinstating the case at the June 25, 2024, hearing, it did not enter a written order until July 25, 2025—twenty-six (26) days after the expiration of trial court's plenary power, rendering the order of reinstatement void.

### iv. Defendants formally objected to Plaintiff's unverified motion.

On June 25, 2024, at the hearing before the trial court on Plaintiff's motion to reinstate, Defendants objected to the said motion to reinstate, alerting the trial court and the Plaintiff's counsel that the verification and jurat were defective, missing the required date of birth and the county of execution:

---

[6] The Supreme Court of Texas has made clear, however, that an unverified motion to reinstate is a nullity and does not extend the trial court's plenary jurisdiction or the time in which to file a notice of appeal. *McConnell v. May*, 800 S.W.2d 194, 194 (Tex.1990) (orig. proceeding) (granting mandamus relief to set aside order reinstating case more than thirty days after dismissal on unverified motion); *Butts v. Capitol City Nursing Home, Inc.*, 705 S.W.2d 696, 697 (Tex.1986). The time limits provided in rule 165a are mandatory and jurisdictional; orders of reinstatement entered after their expiration are void. *Harris Cnty. v. Miller*, 576 S.W.2d 808, 809 (Tex.1979) (orig. proceeding); *Danforth Mem'l Hosp. v. Harris*, 573 S.W.2d 762, 763 (Tex.1978) (orig. proceeding); *N–S–W Corp. v. Snell*, 561 S.W.2d 798, 798 (Tex.1977) (orig. proceeding); *see United Residential Props., L.P. v. Theis*, No. 14–11–00330–CV, 2012 WL 3573882, at *2 (Tex.App.Houston [14th Dist.] Aug. 21, 2012, no pet.).
[7] *Id.* Consequently, because Plaintiff filed an unverified motion to reinstate, the trial court's plenary power in this matter expired on June 29, 2024—thirty days after trial court entered her order of dismissal.

P-R-O-C-E-E-D-I-N-G-S

(June 25, 2024)

THE COURT:  18-DCV-249307, Hamzah Ali
versus Azhar Mahmood Chaudhary and Azhar Chaudhary Law
Firm, PC.  All right.

THE COURT:  Good morning.

MR. CHAUDHARY:  Good morning.  Your Honor,
before we begin we have a preliminary matter that's kind
of critical.

THE COURT:  Okay.

MR. KELLEY:  That's not set or giving me
notice.

MR. CHAUDHARY:  Your Honor, it's relevant
to this hearing --

MR. KELLEY:  I'd like to --

MR. CHAUDHARY:  -- and we're on the record.
The matter relates to the motion that was filed, the
motion to reinstate.  And pursuant to Rule 165A, the
motion has to be verified.

MR. KELLEY:  And it was.

MR. CHAUDHARY:  This motion, Your Honor, is
not verified.  The way you verify a motion is by doing
two things.  One is an affidavit with a jurat and the
other one is what Mr. Kelley did here.

Mr. Kelley relied on Section 132.001 of

13

Civil Practice Remedies Code, which requires that the
jurat includes a date of birth.

          MR. KELLEY:  No.

          MR. CHAUDHARY:  Mr. Kelley did not
include --

          THE COURT:  Okay.  That is part of the
motion, right?

          MR. KELLEY:  Yes.

          THE COURT:  Let's argue the motion.  You
can respond to that while you're --

          MR. CHAUDHARY:  I understand, Your Honor,
but this has --

          THE COURT:  It's a technicality, right?

          MR. KELLEY:  Yes, it's a --

          MR. CHAUDHARY:  Your Honor --

          COURT REPORTER:  I'm sorry, one at a time.

          THE COURT:  Counsel, do this.

          MR. CHAUDHARY:  The problem with that is
the Texas Supreme Court is saying --

          MR. KELLEY:  There's no such thing.

          MR. CHAUDHARY:  And I have case law right
here.

          THE COURT:  Okay, Counsel.  I'm more than

14

*See* Exhibit A, Tr. vol. 1 of 1, pp. 24, lines 9-16, June 25, 2024.

> **v.    The trial court, while it retained plenary jurisdiction, did not timely sign a written order reinstating the case.**

After the case was dismissed for want of prosecution on June 25, 2024, the trial court retained plenary jurisdiction for an additional five (5) days, until June 29, 2024—thirty (30) days after the dismissal of the case. At this point, Plaintiff and his counsel had the opportunity to cure these defects while the Court still had plenary jurisdiction. Multiple appellate courts have held that a litigant may cure the lack of a verification in a motion to reinstate or defects in the evidence supporting that motion by filing a corrected affidavit or declaration, **as long as the correction is filed within the same thirty-day period to file a motion to reinstate.** *In re Valliance* Bank, 422 S.W. 3d 722, 717 (Tex.App.– Fort Worth 2012, no pet.). Here, Defendants specifically pointed out the defects in Plaintiff's verification and jurat nearly five (5) days before the Court lost plenary jurisdiction. All the Plaintiff's counsel need have done was file a corrected verification or declaration with the proper jurat, anytime, in the five days after the hearing. This could have potentially been accomplished in a matter of minutes. Instead, Plaintiff's counsel did absolutely nothing to correct these deficiencies and allowed the Court to lose plenary jurisdiction. It was Plaintiff's counsel decision not to file an affidavit or include a proper unsworn declaration and jurat (including date of birth) under Tex. Civ. Prac. & Rem. Code Section 132.00 in support of verification (to correct his previously deficient unsworn declaration), not some failing of the Court or misinterpretation of the law that led to the Court losing plenary jurisdiction. That decision was absolutely fatal to the prosecution of this case.

Instead of taking advantage of the opportunity to cure the deficiencies in his declaration, the Plaintiff chose to rely on the trial court's oral pronouncement, reinstating the case on trial court's docket. However, an oral pronouncement reinstating the case, or even a docket entry,

conflicts with Tex. R. Civ. P. 165a(3), and the Texas Supreme Court precedent on reinstatement after dismissal for want of prosecution. The Texas Supreme Court in *Emerald Oaks Hotel v. Zardenetta*, 776 S.W.2d 577 (1989) held that an order of reinstatement must be in writing and signed during the period of the trial court's plenary power and jurisdiction. The apex Court has repeatedly held that the time limits provided in rule 165a of Tex. R. Civ. P. are mandatory and jurisdictional and that orders of reinstatement entered after their expiration are void. *Harris County v. Miller*, 576 SW2d 808, 809 (Tex.1979); *Danforth Memorial Hosp. v. Harris*, 573 SW2d 762, 763 (Tex.1978); *NSW Corp. v. Snell,* 561 SW2d 798, 798 (Tex.1977).

Similarly, notwithstanding the Plaintiff's unverified motion to reinstate, the trial court could have, *sua sponte*, reinstated the case by entering a written order while it still had plenary power. *See Dardari v. Tex. Commerce Bank Nat. Ass'n*, 961 S.W.2d 466, 469 (Tex. App.-Houston [1st Dist.] 1997, no pet.) ("[T]he trial court, acting within its plenary power, may reinstate a case on its own motion or at the request of a party who filed an unverified motion.") (citing *Neese v. Wray*, 893 S.W.2d 169, 170 (Tex. App.- Houston [1st Dist.] 1995, no writ)). The trial court, however, did not enter a written order granting the motion to reinstate until July 25, 2024—twenty-six (26) days after its plenary power expired.

It is undisputed the trial court did not sign the order reinstating the case until July 25, 2024. Because the case was not reinstated by a signed, written order during the period the trial court retained plenary power to do so, the dismissal became final. *See Emerald Oaks Hotel*, 776 S.W.2d at 578; *Wallingford*, 253 S.W.3d at 726; *see also Walker v. Harrison*, 597 S.W.2d 913, 915 (Tex. 1980) ("While it is true that orders and judgments may be orally pronounced in open court, a different rule applies when there is a time limit placed on the court's jurisdiction to act on a matter."). When there is a time limit within which the court has jurisdiction to act, the order must

be in writing, specific, and signed by the trial judge. *See Reese v. Piperi*, 534 S.W.2d 329, 331 (Tex.1976).

### V.   <u>Statutory construction in Texas requires strict compliance.</u>

The Code Construction Act applies to the interpretation of the Rules of Civil Procedure. *See*: Tex. Gov't Code Ann. § 311.001(4) (Vernon 1998); *In re Walkup*, 122 S.W.3d 215, 217 (Tex. App.---Houston [1st Dist.] 2003, orig. proceeding). The Act provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage" and that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't Code Ann. § 311.011. [R]ule interpretation is 'a pure question of law over which the judge has no discretion.'" *Bradt v. Sebek*, 14 S.W.3d 756, 762 (Tex. App.--Houston [1st Dist.] 2000, pet. denied) (quoting *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex. 1997)). When a rule of procedure is clear, unambiguous, and specific, the trial court shall construe its language according to its literal meaning, *Bradt*, 14 S.W.3d at 762. *Phillips v. Phillips*, 244 S.W.3d 433 (Tex. App.–Houston [1st Dist.] 2007, no pet.). "[R]ule interpretation is 'a pure question of law over which the judge has no discretion.'. When a rule of procedure is clear, unambiguous, and specific, we construe its language according to its literal meaning." *Maldonado v. Frio Hospital Assoc.*, 25 S.W.3d 274 (Tex.App.–San Antonio [4th Dist.] 2000). It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose . . .Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose."

Here, the Plaintiff and his counsel were required to strictly comply with the statutory requirements of Tex. Civ. Prac. & Rem. Code. Section 132.001. Texas Supreme Court in *Hays* agreed with the statutory construction of Tex. Civ. Prac. & Rem. Code Section 132.001, use of

17

unsworn declarations *in lieu* of an affidavit for verification, that every word of section 132.001 must be presumed to have been used for a purpose, including the requirement that declarant must include his date of birth in the jurat—Plaintiff's unverified motion does not contain declarant's date of birth. Consequently, because the motion to reinstate was not verified, it was a nullity and did not extend the trial court's plenary jurisdiction beyond thirty (30) days of dismissing the case for want of prosecution.

## VI. <u>Texas Supreme Court has clarified the substantial compliance standard as it applies to Tex. Civ. Prac. & Rem. Code, Section 132.001.</u>

At the October 17, 2024 hearing, this Court read and referenced the case of *Bonney v. U.S. Nat'l Ass'n* and instructed Defendants' counsel to address this case (which Plaintiff's counsel argued was central to his case) because it held that the lack of a birth date was a form defect, and its absence did not render a declaration under 132.001 fatally defective. The Court's specific comments were:

THE COURT: Paula A. Bonney, Appellant, versus U.S. Bank National Association.

MR. KELLEY: Yes. The first case I cited in my brief, Judge. I relied on it very heavily. It is a Dallas Court of Appeals July 14th, 2016,

THE COURT: Have a look – a clear look into that case, Counsel, because it says that – I'm reading that – I did not go through the entire case law, but I'm going to read that too. Section 132.001 Civil Practice and Remedies Codes provides that an unsworn declaration may be used in lieu of affidavit. Must include a jurat in substantially the following forms. And then what the actual declaration in that. And then the court says that, we conclude that the Gardner's declaration – and the Gardner's declaration doesn't include – the declaration is this, exactly this: I declare under penalty of perjury that the foregoing factual statements are true and correct based on my review of the business records of Chase. Executed in Franklin County, State of Ohio, on this 4th day of March 2015. JP Morgan Chase Bank. The signature. The name, authorized signature. And the Court Said, we conclude that regardless declaration substantially complied the Section 132.001 even though Gardner omitted her middle name, address, and date of birth.

*See* Exhibit B, Tr. vol. 1 of 1, pp. 46, lines 4-25; pp. 47, lines 1, June 25, 2024.

Defendants agree that the 2016 *Bonney* case from the Dallas Court of Appeals case holds exactly that. However, that 2016 holding is now overruled by Texas Supreme Court's opinion ***Hays St. Bridge Restoration Grp. v. City of San Antonio*** of 2019, and is now contrary to a later holding of the Texas Supreme Court, and is not binding on this Court; moreover, it has been refuted by the Houston Courts of Appeal. Specifically, in the 2023 *Great Value Storage, LLC v. Princeton Capital Case*, the **<u>1st District Court of Appeals</u>** examined the very *Bonney* case this Court was referencing on this very issue and noted how it conflicted with the Texas Supreme Court's holding in the *Hays Street Bridge* case referenced below. As the 1st District Court noted:

> **While some courts of appeals have recognized substantial compliance with the statutory jurat as sufficient, the Supreme Court of Texas has held that omission of the declarant's date of birth meant that the unsworn declaration could not be accepted in lieu of an affidavit even though the declaration stated that it was made under penalty of perjury.** ***See Hays St. Bridge Restoration Grp. v. City of San Antonio***, **570 S.W. 697, 702 & n.15 (Tex 2019) (omission of birth date from sworn declaration rendered it no evidence).** ***But see Bonney v. U.S. Bank Nat'l Ass'n***, **No. 05-15-01057-CV, 2016 WL 39022607, at \*3 (Tex. App.- Dallas July 14, 2016, no pet.) (mem. op.) (concluding declaration substantially complied with section 132.001 even though declarant omitted her middle name, address and date of birth), and United Rentals, Inc. v. Smith, 445 S.W.3d 808, 813 (Tex. App.- El Paso 2014, no pet.) (holding "[f]ailure to include the declarant's birthdate or address is a formal defect having no effect on whether a false state would render the declarant liable for perjury" and did not render declaration inoperative or convert it to unsworn hearsay).[8]**

Then, the 1st District Court of Appeals then held as follows:

> <u>**We do not, however, need to wrestle with the question of whether Cannella's original declaration was inoperative due to its failure to strictly comply with the statute, because after *Great Value* and *WCCG* pointed out the forma defects, Princeton filed supplemental declaration in which he swore under penalty and perjury that the statement in his original declaration are true and correct, and based on his personal knowledge. The supplemental declaration included a jurat that strictly complied with the statutorily prescribed jurat.[9]**</u>

---

[8] *See Great Value Storage, LLC v. Princeton Cap. Corp.*, No. 01-21-00284-CV, 2023 WL 3010773, at \*11 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, pet. granted) (mem. op.), vacated as moot by, No. 23-0722 (Tex. Mar. 8, 2024).

[9] *Id.*

The *Great Value* case is important for many reasons. First, it belies the Plaintiff's preposterous argument that the *Hays* opinion related to the requirements of strict compliance under section 132.001 was merely "dicta." Here, the 1st District Court of Appeals clearly (and correctly) references it as a "holding" in the opinion and accepted it as authority. Second, the 1st District Court of Appeals clearly holds that the way to resolve deficiencies in a section 132.001 declaration is to timely file a supplemental declaration correcting the deficiencies and strictly complying with the jurat requirements of section 132.001; something that the Plaintiff and his counsel had time and opportunity to do, had they so chosen.

Further, as noted in the *Great Value* case, the Texas Supreme Court has resolved the issue of substantial compliance relevant to the statutory requirement of including a declarant's date of birth in an unsworn declaration under Tex. Civ. Prac. & Rem. Code, Section 132.00 *in lieu* of an affidavit, and held that omission of the declarant's date of birth from the jurat meant that an unsworn declaration did not verify the motion to reinstate and could not extend the trial court's plenary jurisdiction. The Texas Supreme Court has made it clear that a jurat missing the declarant's date of birth could not be accepted *in lieu* of an affidavit, *even though the declaration stated that it was made under penalty of perjury*. *See Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 702 & n.15 (Tex. 2019) (omission of birth date from unsworn declaration rendered it no evidence) Emphasis added.

In response to Defendants' plea to this court's jurisdiction over the case, Plaintiff ignores the ultimate authority on this issue (since it ends his case) and instead cites the *Bonney* case and some other opinions from lower Texas Courts of Appeal, which might support his theory of substantial compliance; however, each of those opinions (explained in detail below) predate the seminal Texas Supreme Court precedent in *Hays* case from 2019, which finally decided the issue

of substantial compliance for all lower courts. Therefore, the Texas Supreme Court's opinion in *Hays* is now the law of the land.[10] Again, as discussed above, the Texas First Court of Appeals in a recent subsequent  opinion[11] addressed the issue of substantial compliance in light of the landmark Supreme Court ruling in *Hays* and correctly acknowledged and followed the holding in *Hays*.

When deciding a case, a lower court in Texas must follow the precedent set by previous rulings from higher courts within the state, essentially meaning they must base their decision on the principle of "*stare decisis*," which translates to "to stand by things decided." Defendants respectfully plead that *stare decisis* requires this court to adhere to the Supreme Court precedent of *Hays St. Bridge Restoration Grp.* 570 S.W.3d 697, 702 & n.15 in 2019. Decisions from the Texas Supreme Court are considered binding precedent and must be followed by lower courts when making rulings on similar cases.

Further, if there was any question as to how the Houston Courts of Appeal view the substantial versus strict compliance issue, the December 5, 2023, Order from Chief Justice Terry Adams, submitted to the Court at the October 17, 2024, hearing and attached as Exhibit "C," should end it. In that Order, the Chief Justice specifically cited the *Hays* case as **binding authority (not dicta)** for the rule that **section 132.001 must be strictly complied with and a declaration lacking declarant's date of birth is deficient.** *See* Ex. "C," p. 2.

There is simply no escape for the Plaintiff for this authority. There has never been a single decision from any appellate court in Texas that concludes the clear rule in *Hays* is somehow "dicta." There has never been a single case or Order from either of the two Houston Courts of

---

[10] *See Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 702 & n.15 (Tex. 2019).
[11] *See Great Value Storage, LLC v. Princeton Cap. Corp.*, No. 01-21-00284-CV, 2023 WL 3010773, at *6 (Tex. App.—Houston [1st Dist.] Apr. 20, 2023, pet. granted) (mem. op.), vacated as moot by, No. 23-0722 (Tex. Mar. 8, 2024).

Appeals that questions or refuses to follow the holding in *Hays*. How could there be? This is the holding of the Texas Supreme Court, and all lower courts must follow it. Houston Courts of Appeal have acknowledged, followed and adopted the holding in *Hays*, as evidenced by the opinions and orders from the 1st District Court of Appeals, which specifically apply Texas Supreme Court's precedent in *Hays*—establishing that Texas Supreme Court, as well as the two Houston Courts of Appeals contradict Plaintiff's substantial compliance argument, and supersede authorities cited by Plaintiff that predate Texas Supreme Court precent in *Hays* (2019), including the *Bonney* case.

Moreover, in addition to Texas Supreme Court and the two Houston Courts of Appeals, the Court of Appeals for the Fifth Circuit has weighed in on the requirements of affidavits and adjudicated that jurats are not mere technicalities. The Fifth Circuit has held that under Texas Law, even an affidavit that contained a statement that affiant makes oath but jurat, even though properly signed by notary did not include the phrase that it was sworn before the notary was insufficient and there was no valid affidavit.

> "This case strikes us as quite similar to Crockett. Like Crockett, Jordan in his purported affidavit makes his statements under oath. Compare supra ("Affiant, Bruce M. Jordan, on oath swears . . . ") with Crockett, 439 S.W.2d at 355 ("Sidney Sampson, Affiant, makes oath and says . . . "). Also, like Crockett, the certification does not contain any language showing that the oath was sworn in the notary's presence. Absent such a certification, there is no jurat and consequently, no valid affidavit. Crockett, 439 S.W.2d at 358.

*Stokes & Spiehler Onshore, Inc. v. Ogle (In re Wave Energy)*, 467 F. App'x 248 (5th Cir. 2012).

i.    **No negative treatment of *Hays* by *San Jacinto River Authorities*.**

The negative treatment of *Hays* by *San Jacinto River Authorities* is not on point, instead it clarifies the limitation of immunity statute misconstrued by Court of Appeals. "The Cities and the court of appeals point out that we have also referred to the other provisions of the Act collectively as "limitations on the waiver of immunity." *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 706 (Tex. 2019) (quoting *Zachry*, 449 S.W.3d at 108). On that

basis, the court of appeals held that "to show waiver of immunity, a claimant must plead facts showing that conditions of section 271.154 have been met." 683 S.W.3d at 12 (quoting *Mission Consol. Indep. Sch. Dist. v. ERO Int'l, LLP*, 579 S.W.3d 123, 128 (Tex. App.—Corpus Christi—Edinburg 2019, no pet.)). We disagree." *San Jacinto River Auth. v. City of Conroe*, 688 S.W.3d 124, 131 (Tex. 2024). *San Jacinto River Authority* leaves the "jurat" holding undisturbed.

## VII.   Mandamus relief when a trial court reinstates a case after expiration of plenary jurisdiction.

At the October 17, 2024, hearing, Plaintiff's counsel also erroneously argued that Defendants' authority on the loss of plenary jurisdiction and section 132.001 of Texas Civil Practice and Remedies Code somehow did not apply to reinstatement motions and that the Defendants could not do anything about these issues, until after the case was tried. Nothing could be further from the truth. As set forth below, there is no special carve-out from the rules and the case law for reinstatement in fact, mandamus is the appropriate remedy on issues involving orders signed by the trail court after the expiration of plenary jurisdiction.

**Standard of Review**

Mandamus relief is available when a trial court erroneously reinstates a case following the expiration of its plenary jurisdiction. *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 68 (Tex. 2008) (orig. proceeding); *accord Estate of Howley v. Haberman*, 878 S.W.2d 139, 140 (Tex. 1994) (citing *Emerald Oaks Hotel v. Zardenetta*, 776 S.W.2d 577 (Tex. 1989) (per curiam)). Under those circumstances, mandamus is proper even without showing that the relator lacks an adequate remedy on appeal. *In re Vaishangi, Inc.*, 442 S.W.3d 256, 261 (Tex. 2014) (per curiam) (orig. proceeding).

***In Re Romero***, No. 01-21-00629-CV, the First Court of Appeals granted mandamus relief against Respondent, Honorable Elaine H. Palmer, 125th Judicial District Court, Harris County,

Texas. The First Court of Appeals in its opinion determined that Mandamus relief is appropriate when the trial court abuses its discretion, and the relator has no adequate remedy by appeal. *In re AutoNation, Inc.,* 228 S.W.3d 663, 667 (Tex. 2007) (orig. proceeding); *In re Prudential Ins. Co of America,* 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). An abuse of discretion occurs if there is "a clear failure by the trial court to analyze or apply the law correctly." *Walker v. Packer,* 827 S.W.3d 833, 840 (Tex. 1992) (orig. proceeding). Mandamus relief is available "when a trial court issues an order after its plenary power has expired." *In re Brookshire Grocery Co.,* 250 S.W.3d 66, 68 (Tex. 2008) (orig. proceeding) (citing *In re Sw. Bell Tel. Co.,* 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding)). "Limited deference" is given to the trial court's analysis when the mandamus proceeding stems from the interpretation of legal rules. *Id.*

The First Court of Appeals ruled that in the absence of a timely filed verified motion to reinstate, a trial court's plenary power expires thirty days after dismissal of the case. *Jarrell v. Bergdorf,* 580 S.W.3d 463, 466 (Tex. App.-Houston [14th Dist.] 2019, no pet.) (citing *McConnell v. May,* 800 S.W.2d 194, 194(Tex. 1990)). The Court ruled that although the Real Party in that case filed her motion to reinstate six days after it was dismissed for want of prosecution, her motion was not verified. "An *unverified* reinstatement motion . . . does not extend plenary power beyond 30 days from dismissal." *In re Strickland,* No. 01-01-00972-CV, 2002 WL 58482, at *1 (Tex. App.-Houston [1st Dist.] Jan. 17, 2002, orig. proceeding) (not designated for publication) (emphasis in original) (granting mandamus relief to set aside order reinstating case on unverified motion more than thirty days after dismissal); *McConnell,* 800 S.W.2d at 194 (same). As the Supreme Court has clarified, "an unverified motion to reinstate is a nullity and does not extend the trial court's plenary jurisdiction . . . ." *In re Valliance Bank,* 422 S.W.3d 722, 725 (Tex. App.-Fort Worth 2012, orig. proceeding) (citing *McConnell,* 800 S.W.2d at 194). Consequently, because

24

Real Party filed an unverified motion to reinstate, the trial court's plenary power expired thirty days after Respondent filed her order of dismissal.

**Similarly, *In re Valliance* Bank**, the Second Court of Appeals decided that a trial court has plenary power to reinstate a case within thirty days after it signs an order of dismissal for want of prosecution. Tex. R. Civ. P. 165a(3), (4); *Neese v. Wray*, 893 S.W.2d 169, 170 (Tex.App.Houston [1st Dist.] 1995, no writ) (recognizing trial court has plenary power to reinstate case within thirty days of dismissal even in absence of motion to reinstate). A verified motion to reinstate a case filed within thirty days of a dismissal for want of prosecution extends the trial court's plenary power in the same manner as a motion for new trial. Tex. R. Civ. P. 165a(3), (4). The Supreme Court of Texas has made clear, however, that an unverified motion to reinstate is a nullity and does not extend the trial court's plenary jurisdiction or the time in which to file a notice of appeal. *McConnell v. May*, 800 S.W.2d 194, 194 (Tex.1990) (orig.proceeding) (granting mandamus relief to set aside order reinstating case more than thirty days after dismissal on unverified motion); *Butts v. Capitol City Nursing Home, Inc.*, 705 S.W.2d 696, 697 (Tex.1986). The time limits provided in rule 165a are mandatory and jurisdictional; orders of reinstatement entered after their expiration are void. *Harris Cnty. v. Miller*, 576 S.W.2d 808, 809 (Tex.1979) (orig.proceeding); *Danforth Mem'l Hosp. v. Harris*, 573 S.W.2d 762, 763 (Tex.1978) (orig.proceeding); *N–S–W Corp. v. Snell*, 561 S.W.2d 798, 798 (Tex.1977) (orig.proceeding); *see United Residential Props., L.P. v. Theis*, No. 14–11–00330–CV, 2012 WL 3573882, at *2 (Tex.App.Houston [14th Dist.] Aug. 21, 2012, no pet.).

To extend the trial court's plenary jurisdiction beyond thirty days from the date of dismissal, rule 165a(3) requires that a motion to reinstate be "verified by the movant or his attorney" and be filed within thirty days after the signing of the dismissal for want of prosecution.

Tex. R. Civ. P. 165a(3); *McConnell,* 800 S.W.2d at 194; Butts, 705 S.W.2d at 697; *see Hosea v. Whittenburg*, 311 S.W.3d 704, 705 (Tex.App.Amarillo 2010, pet. denied); *Twist v. McAllen Nat'l Bank*, 294 S.W.3d 255, 260 (Tex.App.Corpus Christi 2009, no pet.).

     The motion for reinstatement here was timely filed but not verified, the motion did not extend the trial court's plenary power, the order granting the motion to reinstate after the thirty-day period had expired is void, and mandamus relief is appropriate. *See In re Brookshire Grocery Co.*, 250 S.W.3d 66, 68 (Tex.2008) (orig.proceeding) ("Mandamus relief is appropriate when a trial court issues an order after its plenary power has expired."); *Estate of Howley v. Haberman*, 878 S.W.2d 139, 140 (Tex.1994) (orig.proceeding) (mandamus will issue when trial court erroneously reinstates case after expiration of its plenary jurisdiction); *In re N.H. Ins. Co.*, No. 02–12–00281–CV, 2012 WL 3264392, at *1–2 (Tex.App.-Fort Worth Aug.13, 2012, orig. proceeding) (mem.op.) (conditionally granting writ of mandamus to set aside void order reinstating suit after plenary power expired); *In re Strickland*, No. 01–01–00972–CV, 2002 WL 58482, at *2 (Tex.App.Houston [1st Dist.] Jan. 17, 2002, orig. proceeding) (not designated for publication) (same).

     As recently as August 14, 2024, the El Paso Court of Appeals granted mandamus relief in *IN RE: MCDONALD'S RESTAURANTS OF TEXAS, INC*., 08-24-00140-CV, holding that when a lawsuit is dismissed for want of prosecution, a plaintiff has 30 days to file a motion for reinstatement. Tex. R. Civ. P. 165a(3); *Gillis v. Harris Cnty*., 554 S.W.3d 188, 191 (Tex. App.-Houston [14th Dist.] 2018, no pet.). If a plaintiff timely files a verified motion to reinstate, the trial court maintains plenary jurisdiction over the case for 30 days after it rules on the motion or the motion is overruled by operation of law (i.e., if the trial court does not grant or deny the motion within 75 days after the judgment is signed). Tex. R. Civ. P. 165a(3). However, if the trial court

does not sign a written order reinstating the case during that time, the dismissal becomes final. *Emerald Oaks Hotel*, 776 S.W.2d at 578; see *In re Wal-Mart Stores, Inc*., 20 S.W.3d 734, 740 (Tex. App.-El Paso 2000, orig. proceeding) (holding that dismissal order became the final judgment upon the expiration of the trial court's plenary power despite oral ruling and instructions to reinstate). "A trial court's oral pronouncement and docket entry are not an acceptable substitute for a written order." *Salinas v. Salinas*, No. 08-17-00006-CV, 2017 WL 2889058, at *1 (Tex. App.-El Paso July 7, 2017, no pet.) (mem. op.) (citing *Emerald Oaks Hotel*, 776 S.W.2d at 578); *accord Wallingford v. Trinity Universal Ins. Co*., 253 S.W.3d 720, 726 (Tex. App.- Amarillo 2007, pet. denied).

The El Paso Court concluded that the trial court abused its discretion by entering an order after its plenary power expired, because the trial court exceeded its jurisdictional authority.

## VIII.    Conclusion

Texas Supreme Court in *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 706 (Tex. 2019) has unequivocally decided that the requirement of date of birth of declarant prescribed in Tex. Civ. Prac. & Rem. Code. Section 132.001 must be strictly compiled with— substantial compliance under old standards is not sufficient. All previous cases where Texas Courts of Appeals have considered substantial compliance with the statutory requirement of Tex. Civ. Prac. & Rem. Code, Section 132.001 predate the seminal *Hays* case—Texas Supreme Court, to date, has not overruled *Hays* and subsequent opinions by the First and Fourteenth Courts of Appeals have acknowledged and followed Texas Supreme Court's interpretation of the subject Texas statute. Therefore, law of the land in Texas is that a jurat must include declarant's date of birth, if an unsworn declaration is used as verification *in lieu* of an affidavit.

Plaintiff and his attorneys simply failed to comply with the statutory requirements of unsworn declarations *in lieu* of an affidavit for the motion to reinstate; resultantly, the motion to reinstate was not verified and therefore a nullity. The trial court was required to enter a written order reinstating the case on its trial docket, an oral pronouncement or docket entry are not an acceptable substitute for a written order. Although the trial court orally reinstated the case while it maintained plenary jurisdiction, it did not enter a written order of reinstatement, until after the expiration of its plenary power. Consequently, on June 29, 2024, thirty (30) days after dismissing the case for want of prosecution, the trial court lost plenary jurisdiction; wherefore, the July 25, 2024 order reinstating the case—entered twenty-six (26) after this court lost plenary jurisdiction—is void.

When a trial court loses plenary jurisdiction, it is not a technical matter; instead, the trial court has no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, and no capacity to act as a court over the case. Accordingly, the trial court erred when it entered a void written order, twenty-six (26) days after it lost plenary jurisdiction, to reinstate the case. Ironically, the substance of the declaration also did not comply with the requirement of establishing good cause for reinstatement of the case, as not only did it not supply any legitimate reason for lack of diligence which resulted in case being dismissed for want of prosecution twice—as the court found out in the oral hearing, it included patently false and misleading statements of Plaintiff's attorney.

## IX.    Prayer

Defendants respectfully request that this court vacate its order reinstating the case on trial docket dated July 25, 2024.

Respectfully submitted,

*/s/ Azhar M. Chaudhary*
Azhar M. Chaudhary
State Bar No. 24082804
440 Louisiana St.,
Ste 948
Houston, TX 77002
Tel.  (281) 265-1010;
Fax. (281) 265-1011
attorney@chaudharyjd.com
Attorney for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document will be served or has been

served to all interested parties in accordance with the Texas Rules of Civil Procedure on October

21, 2024.

*/s/ Azhar M. Chaudhary*
Azhar M. Chaudhary

29

```
1                    REPORTER'S RECORD
                   VOLUME 1 OF 1 VOLUMES
2            TRIAL COURT CAUSE NO. 18-DCV-249370

3                              )
     HAMZAH ALI                ) IN THE DISTRICT COURT
4                              )
                               )
5         PLAINTIFF,           )
                               )
6    VS.                       ) FORT BEND COUNTY, TEXAS
                               )
7                              )
     AZHAR CHAUDHARY, et al    )
8                              )
                               )
9                              )
     DEFENDANTS.               ) 240TH JUDICIAL DISTRICT
10

11

12

13          _____

14                   MOTION TO REINSTATE
            _____
15

16

17      On the 25th day of June, 2024, the following

18   proceedings came on to be heard in the above-entitled

19   and numbered cause before the Honorable Surendran K.

20   Pattel, Judge presiding, held in Richmond, Fort Bend

21   County, Texas.

22

23      Proceedings reported by computerized stenotype

24   machine.

25
```

```
1                    A P P E A R A N C E S

2
     FOR THE PLAINTIFF:
3         LLOYD E. KELLEY
          SBOT NO. 11203180
4         ATTORNEY AT LAW
          2726 BISSONNET, SUITE 240 PMB 12
5         HOUSTON, TEXAS 77005
          (281)492-7766
6         (281)652-5973 FAX
          Kelley@lloydekelley.com
7

8    FOR THE DEFENDANTS:
          AZHAR CHAUDHARY
9         SBOT NO. 24082804
          AZHAR CHAUDHARY LAW FIRM, P.C.
10        440 LOUISIANA, SUITE 948
          HOUSTON, TEXAS 77002
11        (281)265-1010
          (281)265-1011 FAX
12

13        SANJAY CHADHA
          SBOT NO. 00795287
14        ATTORNEY AT LAW
          440 LOUISIANA, SUITE 900
15        HOUSTON, TEXAS 77102

16

17

18

19

20

21

22

23

24

25
```

1                    CHRONOLOGICAL INDEX
                        VOLUME 1 OF 1
2                    MOTION TO REINSTATE

3

4   June 25, 2024

5

6

7                                            PG    VOL

8   Proceedings.......................    4    1

9   Court's Ruling....................   43    1

10

11  Reporter's Certificate............   50    1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P-R-O-C-E-E-D-I-N-G-S
 2                    (June 25, 2024)
 3              THE COURT:  18-DCV-249307, Hamzah Ali
 4  versus Azhar Mahmood Chaudhary and Azhar Chaudhary Law
 5  Firm, PC.  All right.
 6              THE COURT:  Good morning.
 7              MR. CHAUDHARY:  Good morning.  Your Honor,
 8  before we begin we have a preliminary matter that's kind
 9  of critical.
10              THE COURT:  Okay.
11              MR. KELLEY:  That's not set or giving me
12  notice.
13              MR. CHAUDHARY:  Your Honor, it's relevant
14  to this hearing --
15              MR. KELLEY:  I'd like to --
16              MR. CHAUDHARY:  -- and we're on the record.
17  The matter relates to the motion that was filed, the
18  motion to reinstate.  And pursuant to Rule 165A, the
19  motion has to be verified.
20              MR. KELLEY:  And it was.
21              MR. CHAUDHARY:  This motion, Your Honor, is
22  not verified.  The way you verify a motion is by doing
23  two things.  One is an affidavit with a jurat and the
24  other one is what Mr. Kelley did here.
25              Mr. Kelley relied on Section 132.001 of
```

1   Civil Practice Remedies Code, which requires that the
2   jurat includes a date of birth.
3                   MR. KELLEY:  No.
4                   MR. CHAUDHARY:  Mr. Kelley did not
5   include --
6                   THE COURT:  Okay.  That is part of the
7   motion, right?
8                   MR. KELLEY:  Yes.
9                   THE COURT:  Let's argue the motion.  You
10  can respond to that while you're --
11                  MR. CHAUDHARY:  I understand, Your Honor,
12  but this has --
13                  THE COURT:  It's a technicality, right?
14                  MR. KELLEY:  Yes, it's a --
15                  MR. CHAUDHARY:  Your Honor --
16                  COURT REPORTER:  I'm sorry, one at a time.
17                  THE COURT:  Counsel, do this.
18                  MR. CHAUDHARY:  The problem with that is
19  the Texas Supreme Court is saying --
20                  MR. KELLEY:  There's no such thing.
21                  MR. CHAUDHARY:  And I have case law right
22  here.
23                  THE COURT:  Okay, Counsel.  I'm more than
24  happy to hear you.
25                  MR. CHAUDHARY:  Okay, Your Honor.

```
1                THE COURT:  This is a motion, right?  Your
2    argument is part of the motion?
3                MR. CHAUDHARY:  Of course.
4                THE COURT:  Right?  As a response to
5    your --
6                MR. CHAUDHARY:  Understood.
7                THE COURT:  All right.  So let him argue
8    his case and then you can argue your case.  You can
9    argue including the technicalities.
10               MR. CHAUDHARY:  Understood, Your Honor.
11               MR. KELLEY:  Thank you.  Your Honor, it is
12   verified.  It's proper.  Any objection to my motion
13   should have been made, which he didn't even send me a
14   response, so he's not copied me on anything.  The other
15   problem is I haven't -- let me back up, Judge.  This
16   case I was here in 2022.  I made an appearance and I
17   took over for Nomaan.  He --
18               THE COURT:  So you are the counsel since
19   2022?
20               MR. KELLEY:  Yes and I can prove it.
21   Because the Court has notified me then when we got a
22   trial setting, because at that time we announced ready
23   and we asked for trial setting.  And it was another
24   judge.  And he didn't set us until 2023.  So he set us
25   on the docket in September.  Meanwhile, he had filed a
```

1  separate lawsuit.

2           So you'll notice there were two lawsuits

3  set for trial at that time, because we appeared on both

4  of them.  Nomaan came.  I took over the case.  There was

5  an appeal in the middle of that that came up for

6  argument.  PCPA was argued in the other case, not this

7  case.  This case has always been announced as ready for

8  trial, the 2018 case.

9           And so I appear.  I got notice by this

10  Court, a different judge, but Judge Rolnick.  I got

11  notice of a trial setting.

12           THE COURT:  258th, the other Court?

13           MR. KELLEY:  Yes.  That's correct, because

14  it was transferred.

15           THE COURT:  It was transferred to this

16  Court.

17           MR. KELLEY:  Yeah.  Because there was two

18  cases filed and they tried to put the cases at least in

19  the same judge is my understanding.

20           So this one was 22.  He filed this in '22.

21  So we came here on those motions and this one.  And the

22  judge set them both for trial in 2023, one in September

23  and one was going to be this January.  Meanwhile, he

24  filed bankruptcy.  And so we had a year's worth of

25  proceedings in Judge Norman's court in bankruptcy.  He

1   was afound by Norman to have breached his fiduciary duty

2   and stuff like that.  He then had a person show up and

3   pay him $3 million or something like that.  I forgot the

4   exact number.

5              THE COURT:  But argue on the merit of your

6   motion.

7              MR. KELLEY:  Yes.  So because of that

8   bankruptcy and the appeal, when we came up last year for

9   the trial setting, that judge just sua sponte continued

10   it.  There was no motion for continuance or anything

11   filed.  We were ready for trial.

12              THE COURT:  By 458th?

13              MR. KELLEY:  Judge Rolnick, yes.

14              THE COURT:  Okay.

15              MR. KELLEY:  Yes.  He continued it.  When

16   we called, they said it would be reset.  And then, of

17   course, he lost his election, a new judge assigned.  And

18   then they moved the case and we've been trying to find

19   out what's going on.  I came down to get a trial

20   setting.

21              THE COURT:  Where?

22              MR. KELLEY:  From the clerk.

23              THE COURT:  Okay.

24              MR. KELLEY:  From your clerk.

25              THE COURT:  When?

1           MR. KELLEY:  June 10th.

2           THE COURT:  Okay.

3           MR. KELLEY:  That's when I learned -- when

4  we were trying to get a trial setting by my assistant --

5           THE COURT:  Okay.

6           MR. KELLEY:  -- and that's when we learned

7  the case had been DWOP'ed on May 31st.

8           THE COURT:  Okay.

9           MR. KELLEY:  Even the stuff that he has

10 provided shows no notice was ever given to me and which

11 is what I verified in my motion.  I have never had that.

12 And so we are ready for trial.  You can pick a trial

13 date.  There's no more discovery needed.  He's admitted

14 to that in his motion.  And so I verified the motion.  I

15 came last week for the hearing, which was very quick

16 after you dismissed it.  And he objected to the visiting

17 judge.  And so I immediately asked for a hearing this

18 week.  Delayed other events that I had going on.  And so

19 I'm here asking to have the case reinstated and

20 immediately set for trial.  There's no more --

21           (Sotto voce discussion between judge and

22 clerk.)

23           MR. KELLEY:  Some of those judges are not

24 -- those lawyers are not in this case, like Richard --

25 they are in the other case.  And that's the confusion is

1    the notices are not going out to each case.  They're

2    going out collectively.  I see that Mr. Diamond,

3    according to the court's --

4             THE CLERK:  So it didn't go to Lloyd Kelley

5    because they're not the lead attorney.

6             THE COURT:  So who is the lead attorney in

7    this case?

8             MR. KELLEY:  I am the lead attorney and it

9    shows there my office Kimberly@lloydekelley.com got the

10   notice of the trial setting in 2022.  And so there's

11   some confusion I think because the two cases in the

12   movement of the court's --

13            THE COURT:  So Nomaan Husain is not in the

14   case anymore?

15            MR. KELLEY:  No, sir.

16            THE COURT:  So you substituted him or what?

17            MR. KELLEY:  I believe he substituted out

18   and put me in.  This was -- even on the record at the

19   hearing --

20            MR. CHAUDHARY:  Excuse me, Your Honor --

21            THE COURT:  One second, Counsel.  Let him.

22            MR. KELLEY:  So it's clear that I have

23   appeared in the case.  I argued the motions almost two

24   years ago.

25            THE COURT:  That may be true, but I just

1  want to make sure that you are the lead attorney now.

2          MR. KELLEY:  Yes, I'm the lead attorney.

3          THE CLERK:  There's never been in this case

4  an order for us to withdraw him from that case, so we

5  kept him as the lead attorney, because we don't have any

6  order stating to take him off.

7          MR. CHAUDHARY:  Neither a motion to

8  withdraw or substitute.

9          MR. KELLEY:  Well --

10          MR. CHAUDHARY:  There's never been a motion

11  to withdraw --

12          THE COURT:  So Mr. Husain is still on the

13  case?

14          MR. CHAUDHARY:  -- never a motion to

15  substitute.

16          MR. KELLEY:  But even he claims he did not

17  get the notice, so --

18          MR. CHAUDHARY:  Your Honor?

19          MR. KELLEY:  -- the problem is, Judge --

20          THE COURT:  You're not answering my

21  question.

22          MR. KELLEY:  Yes, sir.

23          THE COURT:  Does he receive a notice -- is

24  he still in the case?

25          MR. KELLEY:  According to your staff, yes.

1           THE COURT:  According to you?

2           MR. KELLEY:  I don't know what his office

3   shows.  He gave me the case.  We came to court.  My

4   understanding was he was filing the motion to get me on

5   and him off.  I don't know if that ever got done.  I

6   talked to him not too long ago.  He asked me how it's

7   going.  I said I'm getting a trial setting.  So in that

8   case I can do a quick motion to substitute, if that's a

9   problem, but I clearly showed up.  I've been the lawyer

10  on the case.  I'm the one ready to go to trial.  And

11  certainly having appeared and gotten notice of the trial

12  setting and then it had just been moved, shows no lack

13  of due diligence.

14          THE COURT:  My question to you is, does the

15  client hired you or Mr. Nomaan Husain hired you as a

16  co-counsel or the lead counsel to try the case?

17          MR. KELLEY:  I'm hired as lead counsel to

18  try the case.  Nomaan is going to get out of the case.

19          THE COURT:  Who hired you?

20          MR. KELLEY:  The client, the Plaintiff.

21          THE COURT:  Not the law firm?  You are not

22  associated with or in no way connected with --

23          MR. KELLEY:  He's a friend of mine.

24          THE COURT:  Nomaan Husain is not the one

25  who is putting you in this case to try the case?

1          MR. KELLEY:  I came two years ago.

2  Absolutely not, Judge.  I've been at the bankruptcy

3  hearings.  Nomaan wasn't.  I've been at the hearings

4  here.  Nomaan did come in 2022 with me to introduce me

5  to the judge and explain to the judge.  But other than

6  that, I've always been the lawyer on --

7          THE COURT:  But that means that he's still

8  in the case.  He never withdraw from the case.

9          MR. KELLEY:  I think he thinks he did, but

10 I don't think he realizes he hasn't gotten an order.

11         THE COURT:  Counsel, when you are the lead

12 attorney, you need to know that who is -- who else is in

13 the case.  It doesn't matter what he thinks.

14         MR. KELLEY:  I'm not going to dispute the

15 record of the clerks.  He may have -- his office just

16 may have not --

17         THE COURT:  I see the delaying tactics.

18 This is an '18 case.  There are two DWOPs.

19         MR. KELLEY:  There's no delay on our part,

20 Judge.  We were ready for trial last year.  I

21 voluntarily, without notice of this, came and tried to

22 find a trial setting.  I'm ready for trial now.

23         THE COURT:  So the original trial date by

24 Judge Rolnick in 458th was in September of 2023, right?

25         MR. KELLEY:  Last summer.  '23?

1          THE COURT:  Yeah.

2          MR. KELLEY:  We had a trial setting then.

3          THE COURT:  And he didn't give you a date.

4          MR. KELLEY:  No, he --

5          THE COURT:  And what diligence the

6   Plaintiff took since September of 2023?

7          MR. KELLEY:  Okay.  We prosecuted the

8   bankruptcy to get that finding and then he --

9          THE COURT:  But that is the bankruptcy

10  proceedings.  Did you file any motion to abate here?

11         MR. KELLEY:  No.  I didn't need to, because

12  we were ready for trial last summer, Judge.  And the

13  judge -- the Court sua sponte took us off the trial

14  docket without explanation --

15         THE COURT:  Yeah.

16         MR. KELLEY:  -- no motion for continuance

17  and said that it would be reset.  Then we were told it'd

18  be reset by the new judge, so -- it was also moved over

19  here.

20         THE COURT:  Yeah.

21         MR. KELLEY:  And so we were waiting.  And

22  then when that got a little bit into the time frame, I,

23  on my own, came to check the record to verify when I

24  could get a trial setting.  That's when we discovered

25  that it had been DWOP'ed.  And that's when I immediately

1   filed the same motion that day to get it reinstated.  I

2   came last week for a hearing immediately as soon as your

3   court clerks would allow me.  So there's been no notice

4   to me, even though I got notice of the trial setting.

5   I've appeared in the case.  And so the client is ready.

6   There's -- you know, he can talk about whatever he

7   wants, but we can go to trial, Judge, when you set us

8   for trial.  This is a jury trial.  Approximately five

9   days.  So we've already had a trial on the merits.

10                  MR. CHAUDHARY:  Your Honor --

11                  MR. KELLEY:  And so --

12                  MR. CHAUDHARY:  -- response, please?

13                  THE COURT:  Did you file notice of

14  appearance in this case, Counsel?

15                  MR. KELLEY:  It was my understanding that

16  that's what Nomaan had done.  When I made my appearance

17  that day, there was no objection to it.  I argued the

18  motions.  I've been on the case, Judge.  And so -- and

19  that's how I got the notice of the trial setting that I

20  showed you.

21                  MR. CHAUDHARY:  Your Honor, he has not --

22                  THE COURT:  Counsel --

23                  MR. CHAUDHARY:  -- argued any motions.

24                  THE COURT:  -- usually -- usually even if

25  you are not an attorney on record, if one of the lead

1   attorney requesting an arguing counsel to come and argue

2   my case, you don't need to be on the record, right?

3   They will allow -- the judge would allow a lead -- an

4   arguing counsel to argue a motion of the case, right?

5               MR. KELLEY:  You're correct, Judge,

6   except --

7               THE COURT:  Okay.  So --

8               MR. KELLEY:  -- I was given -- I'm sorry.

9               THE COURT:  -- why would the opposing

10  counsel need to object your appearance on a particular

11  motion hearing?

12              MR. KELLEY:  Well --

13              THE COURT:  And if you're really appearing

14  on -- whatever Nomaan doing or not doing.  But as far as

15  an attorney, as a practicing attorney, you are appearing

16  in a particular case.  You need to file your appearance,

17  right?  It is not Nomaan's duty to do that.  You said

18  that he withdraw from the case and that is your

19  understanding, that he withdraw from the case.  So if

20  he's withdrawing and substituting you --

21              MR. KELLEY:  He is.

22              THE COURT:  -- you need to file your

23  substitution or your appearance, right?

24              MR. KELLEY:  Usually it's done in one

25  document.  That's why I thought I got the notice of the

1    trial setting by the Court.  The Court notified me of

2    the trial setting; therefore, I --

3                  THE COURT:  Counsel, I'm not asking what

4    the Court did.  I'm asking what you did for your

5    appearance.

6                  MR. KELLEY:  I relied on the lead attorney

7    to put his substitute in and name me as the new lead

8    attorney.

9                  THE COURT:  So your argument is that he is

10   the lead attorney?

11                 MR. KELLEY:  He was when I came on the case

12   two years ago.

13                 THE COURT:  How would the Court designate

14   you as a lead attorney when there is no -- when there is

15   no notice of appearance at all?

16                 MR. KELLEY:  I was unaware that Mr. Nomaan

17   hadn't filed that motion.

18                 THE COURT:  This is the due diligence I can

19   see from the docket.

20                 MR. KELLEY:  Well, the due diligence on

21   prosecuting -- attorneys have always been here.  We've

22   announced ready for trial several times.  We got a trial

23   setting.  We were ready for that trial setting --

24                 THE COURT:  Counsel, this case has been

25   transferred to this case on May of 2023.

1          MR. CHAUDHARY:  One year, no action.
2    Absolutely none.

3          MR. KELLEY:  That's not true.

4          MR. CHAUDHARY:  That is true, Your Honor, I
5    have --

6          MR. KELLEY:  We were set for trial
7    September 2023 and the Court -- we had hearings in two
8    cases.  And that's why there's confusion, Judge.
9    There's two cases -- two cases that --

10         THE COURT:  This case has been transferred
11   to this Court on May of 2023.

12         MR. KELLEY:  To a different judge.  And
13   that judge had them both.

14         MR. CHAUDHARY:  This court, Your Honor.

15         MR. KELLEY:  No.  That judge had them both
16   and set them for trial as I've shown you on September
17   and then one in January 2024.  We were set last year.
18   And the Court sua sponte -- there's no motion for
19   continuance by us -- moved that case.  And we were told
20   when the new judge gets on the bench, we would get a new
21   trial setting.  After that didn't happen giving a new
22   judge some time, I, on my own, made inquiry --

23         THE COURT:  Counsel, your trial setting was
24   in September --

25         MR. KELLEY:  Of last year.

1           THE COURT:  -- last year.

2           MR. KELLEY:  And the Court moved it.

3           THE COURT:  And May of last year it is

4  already transferred to another court.

5           MR. KELLEY:  No, no.  May, then September.

6  So May it was transferred to Judge Rolnick or he had it.

7           THE COURT:  No.  May it is transferred to

8  this Court from Judge Rolnick's Court.  Judge Rolnick's

9  Court is 458.  Judge Rolnick lost the election in

10  November 2022.

11          MR. KELLEY:  2022?

12          THE COURT:  Correct.

13          MR. KELLEY:  Then I'm off on my date.

14          THE COURT:  Yes.

15          MR. KELLEY:  Then I apologize.  It was set

16  for trial last year.

17          THE COURT:  Correct.

18          MR. KELLEY:  By the 458, right?

19          THE COURT:  Correct.

20          MR. KELLEY:  And then it was -- no.  It was

21  transferred, then the trial setting was last September.

22  There's been nothing --

23          THE COURT:  Counsel?

24          MR. KELLEY:  Yes.  You've been on the bench

25  more than a year?  My understanding was you were taking

1  the bench in January.  I may be wrong, but then --

2                THE COURT:  I took the bench in January of

3  2023.

4                MR. KELLEY:  2023.  Then I'm off --

5                THE COURT:  Yeah.

6                MR. KELLEY:  -- by my calculations.

7                THE COURT:  Yes.

8                MR. KELLEY:  It was set for trial last

9  September by the other judge, correct?  The other judge

10 is the one that set the trial, then it was moved here

11 last year.

12               THE COURT:  May of 2023.

13               MR. KELLEY:  But then how did it get set

14 for trial in --

15               THE COURT:  Maybe prior to May of 2023.

16               MR. KELLEY:  It must have been.

17               THE COURT:  So that means you guys are not

18 even following the dockets.

19               MR. KELLEY:  May I see the -- I'm not

20 following you.  No.  It was set for trial in September

21 of last year.

22               THE COURT:  Correct, Counsel.  When was the

23 e-mail?  What was the e-mail date?

24               MR. KELLEY:  September 20th, 2022.  A year

25 before.  So before it was transferred it was set for

1    trial.

2              THE COURT:  Counsel, Judge Rolnick, prior

3    to his election, he set that case for trial.

4              MR. KELLEY:  Correct.

5              THE COURT:  And that was in 2022.

6              MR. KELLEY:  Correct.

7              THE COURT:  So he set that for a year

8    after.

9              MR. KELLEY:  That's correct.

10             THE COURT:  Okay.  Then he lost the

11   election in November of 2022 and new judge assumed the

12   office.  He find some reason he doesn't want to take the

13   case and he transferred that case to here --

14             MR. KELLEY:  In May --

15             THE COURT:  -- in May of 2023.

16             MR. KELLEY:  But the trial setting never

17   got transferred and I didn't even get notice of that

18   transfer, so I don't think --

19             MR. CHAUDHARY:  It was --

20             THE COURT:  Counsel, what did you do from

21   September of 2022 until September of 2023?

22             MR. KELLEY:  Waited for the trial setting,

23   because we thought it was going to trial.  And then we

24   were told it was being moved sua sponte.  There's no

25   motion in the file for continuance.

1              THE COURT:  Correct.  So you don't have any

2  responsibility to check with the Court what happened to

3  the case for a year?

4              MR. KELLEY:  No, not a year.  I mistakenly

5  thought a new judge was taking the bench in January.  I

6  got it off.  That I was not clear on.  But as soon as it

7  became a little bit aged, I personally checked myself

8  for a trial date.  I came down and said I need a trial

9  date.  That's when I discovered -- I had my assistant

10  start calling.  That's when we find the DWOP --

11              THE COURT:  Your assistant called where?

12              MR. KELLEY:  To your office.

13              THE COURT:  When?

14              MR. KELLEY:  She started sending e-mails

15  before June 10th.

16              THE COURT:  Yeah.

17              MR. KELLEY:  Right on the first -- you

18  DWOP'ed it May 31st, right?  Within the first week in

19  June my assistant is the one that told me -- I didn't

20  get notice.  My assistant told me, oh, it's been

21  DWOP'ed.

22              THE COURT:  Counsel, you did not even file

23  your notice of appearance.

24              MR. KELLEY:  Judge, that is technical and I

25  can take care of that.  But we called on our own to find

1   a trial setting.

2           THE COURT:  You are saying that you are

3   lead attorney and you are expecting a notice from the

4   Court for a DWOP even when you are not -- you are not on

5   the record.

6           MR. KELLEY:  I was expecting the Court to

7   set it for trial.

8           THE COURT:  Counsel, you're talking an

9   entirely different subject.  I'm talking about you not

10  filing for your appearance.  You are expecting the Court

11  to send every single notice to you when you haven't even

12  submitted a notice of appearance.

13          MR. KELLEY:  Your Honor, the Plaintiff

14  wants to prosecute his case.  If there's been some kind

15  of miscommunication because of the multiple cases and

16  the movement of the case without notice -- we were

17  expecting a trial setting and when that didn't happen we

18  sua sponte looked.

19          THE COURT:  You are still misrepresenting.

20  There was notice to the lead counsel.

21          MR. KELLEY:  Nomaan.

22          THE COURT:  Yes.

23          MR. KELLEY:  He says he doesn't get the

24  notice.

25          THE COURT:  Let him come then.

1          MR. KELLEY:  Okay.

2          THE COURT:  If he's saying that he never

3   received the DWOP notice, then let him come and -- or

4   file an affidavit that he never received.  Because if he

5   hasn't changed his office, then definitely that notice

6   has been sent to him.

7          MR. KELLEY:  Your Honor, we were -- the

8   clients are entitled to --

9          THE COURT:  Counsel, I just want the

10  counsel to be honest to the Court.

11         MR. KELLEY:  I'm very honest.  I told you I

12  didn't get notice and that's been verified by your

13  clerks.

14         THE COURT:  You haven't even submitted --

15  filed your notice of appearance, then how can you expect

16  a notice from the Court?

17         MR. KELLEY:  Actually, under the rules a

18  notice of appearance is not required when I appeared in

19  open court, announced I was here as lead attorney, and

20  then I get notice of the trial setting.  So the Court --

21         THE COURT:  So you announced that you are

22  going to be the lead attorney --

23         MR. KELLEY:  Yes.

24         THE COURT:  -- and going to be on the

25  record?

1          MR. KELLEY:  I don't know if it was on the

2    record, but the judge recognized me as the lead

3    attorney.  That has not been in question for two years.

4    Me being the lead attorney and Mr. Nomaan has not been

5    since that time here.

6          THE COURT:  Ever since the inception of the

7    case Mr. Nomaan is the lead attorney here on the record.

8    And now you're saying that he didn't even receive the

9    notice.

10          MR. KELLEY:  That's what I understand.

11    Judge, I can't testify for somebody else.  I could tell

12    you from my perspective --

13          THE COURT:  Then just say I don't know,

14    Counsel.

15          MR. KELLEY:  Okay.  I don't know -- well,

16    no, I did talk to him.  He said he didn't get any notice

17    and that's when I moved for it.  So when I was here last

18    week several people in front of me had not gotten

19    notices and it was my understanding there had been a

20    little problem in the notices.

21          THE COURT:  There was absolutely no

22    problem --

23          MR. CHAUDHARY:  There was --

24          THE COURT:  -- issuing the notice.  If you

25    are on the record, then you will get the notice.

1          MR. KELLEY:  I can fix that, Judge, by

2    simply filing a piece of paper today that says I'm the

3    lead attorney.

4          THE COURT:  It is not a piece of paper,

5    Counsel.  It is not a piece of paper.

6          MR. KELLEY:  It's the notice to the Court

7    and I will provide that today.

8          THE COURT:  It is not a piece of paper.

9          MR. KELLEY:  I understand, Judge.  But I

10   understood two years ago that was taken care of and

11   that's why I got notice from the Court about the trial

12   setting.  There would be no reason to give me notice if

13   I wasn't the lead counsel.

14         MR. CHAUDHARY:  And that goes to diligence,

15   Your Honor.

16         MR. KELLEY:  There's no such thing as lack

17   of diligence.  The case is ready for trial, Judge.

18         THE COURT:  All right.  Counsel, your

19   response?

20         MR. CHAUDHARY:  Your Honor, the first

21   problem is that the motion is not verified and I've got

22   a Supreme Court case here for your consideration in

23   which if a motion that is -- a motion to reinstate is

24   unverified, it is a nullity as if it were never filed.

25   And I'd like to submit this for your consideration, Your

1    Honor.

2              And, secondly, Your Honor, I have one of

3    the exhibits attached to my motion in which I've

4    attached the docket of this case.  And in that docket

5    Mr. Kelley is nowhere to be found.  The last action in

6    this case was 2024.  And in 2024, Your Honor -- it's

7    footnote number 15, if you'd like to go there -- but in

8    2000 and -- this case was filed in 2018.  There was some

9    discovery in '18 and some action in '19.  Nothing

10   happens in '20.  Nothing happens in '21.  In '22 there

11   is a motion for summary judgment, which was denied --

12   sorry, in 2020 -- in 2020 there was a motion for summary

13   judgment, denied.

14             Two years go by.  Absolutely no activity in

15   the case.  The Court schedules it on the DWOP docket,

16   the previous Court, and Nomaan files a motion to retain,

17   but fails to show up for the hearing.  The case should

18   have been dismissed even back then, but the Court was

19   generous and reinstated the case.  Then two years go by.

20   Absolutely no activity again.  Nothing, absolutely

21   nothing, for two years.  The case was transferred here

22   and accepted by this Court in May of 2023.  Over a year

23   goes by and absolutely no activity.

24             It gets scheduled for the DWOP docket.  The

25   DWOP notice is sent out to the addresses on file to two

1    attorneys.  Mr. Kelley was never an attorney in this

2    case.  He's never, ever -- he's --

3                  THE COURT:  He's an attorney, Counsel.

4                  MR. CHAUDHARY:  I know, Your Honor, but

5    he's an attorney after he filed the motion to reinstate.

6    Prior to filing that, he was never in this case.  He's

7    never appeared for any of the hearings.  You can check

8    the transcript.  His name is nowhere to be found.  He is

9    an attorney in one of the other cases, but nothing to do

10   with this.

11                  So in 2024 May after the last activity,

12   which was DWOP in 2024, May of 2024, this Court sends

13   out a notice, properly sent out and received.  Hearing

14   was scheduled May 30th.  Nobody shows up at that hearing

15   again, Your Honor, second time.  No one.  Neither

16   Nomaan, nor the other attorney, Mr. Daughtry.  And

17   Mr. Kelley was nowhere to be found back then.

18                  After it's dismissed all of a sudden these

19   misrepresentations to the court that I have been in the

20   case since 2022 and the previous judge said something to

21   me or something to the other attorney recognizing.  Your

22   Honor, that's not how things progress.  There's a proper

23   procedure in place to do these things.

24                  So, Your Honor, just the first objection

25   alone that the jurat is defective because it does not

1  include a date of birth, the Texas Supreme Court is very

2  clear on that.  It --

3               THE COURT:  What does it say?

4               MR. CHAUDHARY:  Your Honor, if you go to

5  footnote number 15, Your Honor.

6               MR. CHADHA:  It's also missing the place of

7  execution, Your Honor.  There's some other requirement

8  in there.  It's deficient on multiple things.

9               MR. CHAUDHARY:  So the foot number 15

10 reads, Your Honor -- and I'd read it for you.  See Texas

11 Rules of Civil Practice and Remedies Code Section

12 132.001, which is what he used to verify this motion.

13 Providing that an unsworn declaration used in lieu of an

14 affidavit must include a jurat in substantially the

15 prescribed form, which includes declarant's date of

16 birth.

17               There is no date of birth.  The Texas

18 Supreme Court is saying if it's missing a date of birth,

19 it is a nullity.  It has to be denied, Your Honor.

20               The other problems with the motion are that

21 for six-year-old case, four years go by, absolutely no

22 activity.  None whatsoever.  So the two standards that

23 the Court of Appeals and Texas Supreme Court has

24 employed with cases that are dismissed for want of

25 prosecution the first one is lack of prosecution, lack

1   of diligence.  Your Honor, you, yourself, have looked at
2   the docket.  There's no diligence whatsoever.
3             MR. KELLEY:  Your Honor, first --
4             MR. CHAUDHARY:  The second -- Your Honor,
5   may I?
6             THE COURT:  Yes.
7             MR. CHAUDHARY:  The second is conscious
8   indifference.  There couldn't be any more conscious
9   indifference in this case by three counsels.  Two of
10  them have not bothered to attach their affidavit to say
11  we didn't receive notice.  In other words, they have
12  acknowledged that they have received the affidavit.
13  Here we have Mr. Kelley making representations on their
14  behalf.  They're absent.  They haven't filed a motion to
15  substitute.  They have not filed a motion to withdraw.
16  Nobody knows Mr. Kelley's intentions.  Telepathically
17  the Court is required to know -- to send notice to
18  Mr. Kelley?  That's not possible, Your Honor.
19             Your Honor, I don't want to take up too
20  much of your time, Your Honor.  Everything that the
21  Court needs -- the case has already been dismissed.  It
22  cannot be reinstated, Your Honor.
23             First of all, the motion is deficient.
24             MR. KELLEY:  No.
25             MR. CHAUDHARY:  And without a verification,

1  which is required under Texas Rules of Civil Procedure

2  165A, the motion is a nullity.  There is no motion

3  before the Court to be adjudicated.

4           Secondly, Your Honor, even if there were no

5  deficiencies in the motion, which is this major that's

6  why Texas Supreme Court weighed in on it.  The two

7  requirements for a case to be dismissed -- this is the

8  second time.  The first time comes up on DWOP docket.

9  The last activity was in 2020.  Two years go by and no

10 activity comes up on the DWOP docket.  In 2022 Nomaan

11 Husain, the lead attorney, files a motion to retain.

12 Fails to show up for the hearing.  The case should have

13 been dismissed because appearances on DWOP motions are

14 mandatory.  Anyhow, the Court was generous.  It was

15 reinstated.  Another two years go by, then notices go

16 out again to these attorneys.  These attorneys have no

17 respect for this Court, Your Honor.  They've not filed

18 anything.  Absolutely nothing.  Not a motion to retain.

19 Not a motion to reinstate.  They have not submitted

20 their affidavits.  They did not receive notice.

21 Everything the Court was required to do has already been

22 done, Your Honor.  Here comes Mr. Kelley making all

23 these mis- -- candor, Your Honor is the key.  Honesty to

24 the Court is the key for attorneys to be officers of

25 Court.  That is a basic requirement.  Mr. Kelley has

1  made all kinds of misrepresentations.

2              THE COURT:  All right, Counsel.

3              MR. CHAUDHARY:  He's never appeared for any

4  of the hearings.

5              MR. KELLEY:  Judge, may I respond?

6              THE COURT:  I will give you the opportunity

7  to --

8              MR. KELLEY:  He's not making an appearance

9  either.  The problem is he doesn't appear and yet he

10 just shows up.

11             MR. CHAUDHARY:  Your Honor, I'm arguing --

12             MR. KELLEY:  See, he's pro se and he's --

13             MR. CHAUDHARY:  No, Your Honor.  I'm the

14 attorney of record and it's in there.

15             MR. KELLEY:  Okay.  But he's showing up for

16 some limited purpose --

17             THE BAILIFF:  Gentlemen, y'all cannot keep

18 talking over each other.

19             MR. CHAUDHARY:  All right.  Thank you.

20             MR. KELLEY:  Your Honor, may I respond to

21 the argument about the verification?

22             THE COURT:  Any other issues that you need

23 to bring up, Counsel?

24             MR. KELLEY:  May I?

25             MR. CHAUDHARY:  It's from 2022.

```
1               THE COURT:  All right, Counsels.  What is
2      your response?  Before you say, when did you appear
3      first?
4               MR. KELLEY:  In I believe it's in 2022.
5               THE COURT:  Which month?
6               MR. KELLEY:  I don't have that in front of
7      me, Judge.  I don't have that.
8               MR. CHAUDHARY:  Or for which --
9               THE COURT:  At least prior to December of
10     2022, right?
11              MR. KELLEY:  Well, Your Honor, the fact
12     that I got notice September 20th, 2022 --
13              THE COURT:  Okay.
14              MR. KELLEY:  -- shows that I appeared and
15     was in front of the judge.
16              THE COURT:  So whatever happened after
17     September of 2022, you are aware, right?
18              MR. KELLEY:  No, sir.  I did not get the
19     notices --
20              THE COURT:  I'm not talking about --
21              MR. KELLEY:  I was --
22              THE COURT:  So are you aware of the fact
23     that there was a prior DWOP notice?
24              MR. KELLEY:  I was not aware of that when I
25     took the case.  But it was set for trial and that's all
```

1    that's really required is that we want to prosecute the

2    case.  He's used the wrong standard.  There's no

3    conscious indifference on this case.  That's a default

4    judgement.  In this case, Judge --

5                    THE COURT:  Counsel, the previous DWOP was

6    in December of 2022.

7                    MR. KELLEY:  Yes, I was not counsel then.

8                    THE COURT:  You said that you appeared in

9    2022.

10                   MR. KELLEY:  No.

11                   THE COURT:  This was in December 2022.

12                   MR. KELLEY:  No, the DWOP was -- I don't

13   believe it's -- is the DWOP 2022?

14                   THE COURT:  Correct.

15                   MR. KELLEY:  I don't know if that's

16   correct.  I was unaware of that at that time.  I did not

17   get notice of that for sure.  The record shows that, so

18   I would have appeared at the trial when he set it for

19   trial.  How would he have set it for trial and give a

20   DWOP notice?  It doesn't make sense.

21                   THE COURT:  Because the lead counsel at

22   that time filed a motion to retain and the judge granted

23   the motion to retain in 2022 -- December 2022.  And

24   Mr. --

25                   MR. KELLEY:  That doesn't make sense,

1    because it was set for trial.  We were already set for

2    trial.  You can't DWOP a case that's set for trial.  You

3    can only default it.  So it doesn't make sense that you

4    would set a trial in September 2022.  Something's wrong.

5    My understanding, Judge, with the way this case has

6    progressed, if you will set us for trial, we get this

7    case tried and over with.

8                    I am certain that my verification is good.

9    Their objections untimely and not in writing are that

10   I'm missing a birth date.  That doesn't make it

11   unverified.

12                   THE COURT:  When you are saying that there

13   is something wrong in the record, tell me what is wrong

14   in the record.

15                   MR. KELLEY:  I'm not getting notices,

16   except of the trial setting.  So therefore the court --

17   not you, not you.  But some court system doesn't have me

18   in the system to get all the notices.  I'm totally

19   unaware of any default after the trial setting.

20                   THE COURT:  So since you appeared along

21   with Nomaan Husain he hasn't done anything according to

22   you, right?  You become the lead attorney.  You are

23   taking care of everything, correct?

24                   MR. KELLEY:  The only thing to be done is

25   to go to trial.  That's what we were waiting for.